HYDRAULIC POWER COMPANY OF NIAGARA FALLS, Respondent, *v.* PETTEBONE-CATARACT PAPER COMPANY, Appellant.

HYDRAULIC POWER COMPANY OF NIAGARA FALLS, Respondent, *v.* CATARACT CITY MILLING COMPANY, Appellant.

Fourth Department, November 23, 1921.

**Injunction — subjects of protection and relief — actions to enjoin defendants from interfering with construction of tunnel along Niagara river in accordance with pre-existing contracts — actions not for specific performance — equity — equity is always open to prevent breach of contract where remedy at law is inadequate and judgment decreeing relief will be adapted to exigencies of proof at close of trial — waiver — refusal to carry out provisions of contracts constitutes waiver and breach by defendants barring assertion of claim in equity — contracts not unconscionable or unilateral where evidence indicates all pending matters were subject of calm and deliberate adjustment — doctrine of laches as predicated in estoppel not applicable — corporations — merger not inoperative to carry over contractual rights invoked in action where there has been definite adoption of obligations — Appellate Division may pass on requests to find.**

In actions to enjoin the defendants from interfering with the construction of a tunnel and appurtenances along the bank of the Niagara river for the purpose of collecting the water discharged by the mills adjacent thereto, it appeared that the plaintiff and defendants, each of whom maintained plants for the generation of electric power along the river, entered into contracts settling existing controversies between them and providing for the construction of the tunnel at a future date and binding their successors and assigns; that nearly fifteen years after the delivery of the contracts (the plaintiff's predecessor having been merged into the plaintiff) written notice was served on the defendants by the plaintiff, outlining its purpose to construct the tunnel and submitting a sketch. At this point the defendants adopted a policy of antagonism to the work, and repudiated the contracts by refusing to join an engineering conference provided for by the contracts.

*Held*, that the actions are not actions for specific performance, since the judgments awarded do not contain any mandatory or directory provisions;

That equity being always open to prevent breach of a contract where the remedy by way of damages in an action at law is inadequate, the judgment decreeing relief herein will be adapted to the exigencies of the proof as they exist at the close of the trial and without limitation by the form of the allegations in the complaint indicative of a purpose to seek specific performance;

That the refusal of the defendants to carry out the provisions of the contracts amounts to both a waiver of such provisions and a breach of the contracts, and they cannot be heard in a court of equity to assert their own breach in support of claimed invalidity flowing therefrom;

That it cannot be said that the contracts were unconscionable and unilateral, since all pending matters concerning the provisions thereof were the subject of calm and deliberate adjustment;

That the doctrine of laches, as predicated in estoppel, does not apply, since the contracts, in their express provisions, recognize the fact that the right was not to be enjoyed until some time in the future, and it appears that there was no effort to enjoy the privileges for nearly fifteen years;

That the merger between the plaintiff and its predecessor was not inoperative to carry over the contractual rights invoked, since the board of directors of the plaintiff definitely assumed all the obligations of its predecessor, and, even if that were not so, the effort of the plaintiff to establish its right to the enjoyment of the benefits of the contracts, would necessarily estop it from repudiating the burdens thereunder.

The Appellate Division has the power to pass upon requests to find where the trial court, inadvertently, fails so to do.

APPEAL, in the first above-entitled action, by the defendant, Pettebone-Cataract Paper Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 14th day of July, 1920, upon the decision of the court rendered after a trial at the Erie Special Term.

Appeal, in the second above-entitled action, by the defendant, Cataract City Milling Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 14th day of July, 1920, upon the decision of the court rendered after a trial at the Erie Special Term.

*Louis Marshall* and *William W. Storrs,* for the appellants.

*Edward E. Franchot,* for the respondent.

LAMBERT, J.:

These actions involve identical issues and differ only slightly in their facts. They were tried together and come to this court upon a single record. Decision in one necessarily controls in the other.

The plaintiff is the owner of a hydro-electric system at Niagara Falls.   By means of a canal it taps the Niagara river above the falls and conveys water therefrom to a basin located on the high bank of the river below the falls.   From this basin the water is carried over the bank onto turbines near the river level and thereby much electric power is generated.

The defendants by mesne conveyances (the details of which are not of controlling significance) are respectively the owners of certain water rights, by virtue of which they take and have for years taken quantities of water from such basin and conducted the same to turbines upon their properties and thereby generated electrical power for their own private uses.

The defendants' title extends only to the edge of the high bank below the falls.   That bank is about 215 feet above water level in the river.   Between that title and the margin of the stream is the slope of the bank (of varying width) which is owned by the plaintiff.

The turbines of the defendants are located about 100 feet below the top of the high bank and after the water was run onto those turbines it was formerly discharged on the sloping bank so owned by the plaintiff, down which it flowed into the river.

Prior to the making of the contracts of January 1, 1900, hereinafter discussed at length, the plaintiff's predecessor (The Niagara Falls Hydraulic Power and Manufacturing Company) owned those rights and equities, important here, and which, it is now claimed, have passed to this plaintiff by virtue of a merger of such predecessor into the present plaintiff corporation.

The controlling element in these litigations is to be found in the construction and effect of two certain contracts between plaintiff's predecessor on the one part and the defendants respectively on the other, which contracts were made as of January 1, 1900.

Prior to the making of those agreements (which are substantially identical in form) controversies had arisen between plaintiff's predecessor and each of the defendants respecting the past usage by such defendants of water from such basin. There was then pending at least one litigation arising out of such controversies and the respective rights of the parties

had led to numerous and conflicting claims. After considerable negotiations and with the aid of able counsel upon each side those contracts were made.

Such recite the pendency of differences and disputes and of a suit involving the relative water rights of the parties and a purpose to adjust all such matters in such contract. Such contracts definitely fix the quantity of water to which each of the defendants is entitled, in cubic feet per second. They fix payment for excess water used in the past and detail at great length the methods and agreements for the measuring of the water to be used in the future. They then treat of the matter here involved and in connection therewith recite as follows:

" And whereas, it is contemplated by said party of the second part, that it will sometime in the future construct a tunnel, flume or other conduit along or within the easterly bank of Niagara River for the purpose of collecting the water discharged by the mills operating on the top of said bank, and otherwise flowing over said bank, and of accumulating such water and making use of the same, in the development of power on the lower portion of said bank."

Then therein follow detailed provisions which accomplish the following results:

*First.* The granting of a right to construct the tunnel and appurtenant constructions for the collection and utilization by plaintiff of the waste water from defendants' turbines.

*Second.* Provision for contingencies of construction, operation and repair.

*Third.* Provision that such tunnel should be at least seventy-five feet below the surface.

*Fourth.* Provision for submission of plans and sketch to the defendants, prior to the commencement of construction.

*Fifth.* Provision for written objection by the defendants within thirty days.

*Sixth.* Provision that, upon the occurring of differences as to the practicability of the plans submitted, the engineers of the parties should confer in attempting an adjustment.

*Seventh.* Provision that, if such engineers should be unable to agree, then that a third engineer should be called in.

*Eighth.* That if there should arise inability to agree upon

the third engineer, then that such third engineer should be the chief engineer of the Holyoke Water Power Company.

*Ninth.* A general acquittance between the parties.

*Tenth.* A provision in the following words: " It is hereby mutually understood and agreed that this agreement shall bind and inure to the benefit of the parties named and also to their respective successors and assigns."

*Eleventh.* A provision in the following words: " In case of the sale by said party of the second part of all its property and franchises to a corporation which shall assume its liabilities, and it shall thereupon be deemed advisable to dissolve said party of the second part, it is further agreed by said first party that in such case it will consent to the substitution of said purchasing corporation in place of said second party, and will look to it, said purchasing corporation, for the fulfillment of all the obligations which it shall assume."

In 1914 (nearly fifteen years after the delivery of such contracts) (the plaintiff's predecessor having then been merged into the plaintiff) plaintiff served written notice on the defendants of its purpose to commence construction of the tunnel and appurtenances, and submitted a sketch in connection therewith. Very clearly, this was an effort upon the part of the plaintiff to literally comply with the provisions of this contract and embodied the assertion upon its part of its ownership by succession to the rights of its predecessor thereunder.

Both defendants immediately adopted a position antagonistic to that on the part of the plaintiff and, after various correspondence on the subject, definitely took the position that each repudiated said contract and all of its provisions and such defendants refused to join in any engineering conference and entirely failed and omitted to participate either in conference or in the selection of a third engineer. After waiting the period of time contemplated by such contract the plaintiff called in the chief engineer of the Holyoke Water Power Company and that engineer and the engineer of the plaintiff passed on and approved (with some slight modification) the contemplated plans of plaintiff for the construction of such tunnel.

It is thus seen that the plaintiff in the detail of the establish-

ment and adoption of its plan of construction has followed specifically the provisions of such contract. It is equally plain that each defendant was then and has since continued to repudiate all effect of such contract and has adopted a policy of obstruction to the progress of this work.

Upon threatened prevention of the prosecution of such work, these actions were brought. They were originally tried before Mr. Justice EMERY, but his death occurred prior to decision thereof. The evidence taken before him was then stipulated before Mr. Justice WHEELER; some slight additional proof was taken and the matter was submitted to the latter, who has rendered the decision as to which complaint is now made.   (112 Misc. Rep. 528.)

From recitals in the briefs it is now apparent that since judgment and pending these appeals, the plaintiff has actually constructed its tunnel and actually consummated its claimed rights under this contract. It is also stated therein that such has been accomplished without any damage or injury to either of the defendants.

The judgments enjoin the defendants from obstructing or interfering with the progress of such work; decree liability against the defendants for damages occurring through past obstruction and interference; and direct reference to ascertain the amount of such damage.

It is first contended by the appellants that these actions are, in substance, in equity to enforce specific performance of the contracts of January, 1900; and that equity will not undertake specific performance of contracts so indefinite in their provisions as these. It is urged that the provisions for engineering conference and arbitration (above generally described) are so material and vital in said contract that the failure of definite provision in respect to the detail of such work prohibits, under well-settled rules, a judgment of specific performance.

That these actions are not actions for specific performance seems most plain.

The judgments awarded do not contain any mandatory or directory provisions whatsoever. The essential therein is injunction against breach of contract by the defendants.

Every action for injunction against breach of contract

necessarily embodies some suggestion, paralleling specific performance. Injunction against breach of a contract necessarily paves the way for performance. Yet equity is always open to prevent breach of a contract where remedy by way of damages in an action at law is, for any reason, inadequate. (*City of Jamestown* v. *Penn. Gas Co.*, 264 Fed. Rep. 1009.)

To that extent and no further, do these actions partake of the character of specific performance.

True, the complaint contains some allegations and recitals indicative of a purpose to seek specific performance. This is not vital, however. The action being in equity, the judgment decreeing relief will be adapted to the exigencies of the proof as they exist at the close of the trial and without limitation by the form of the allegations. (*Taylor* v. *Commercial Bank*, 174 N. Y. 181; *Bloomquist* v. *Farson*, 222 id. 375.)

But if the actions were for specific performance it does not follow that a court of equity would be powerless to grant relief. The grant of the easement right is definite and certain. It is created by the contracts as of the time of the execution thereof. It is only in preservation of the equities of the defendants that detailed provision is embodied touching the manner of use of the right so created. The provisions for the functioning of the engineers' conference all look to minimizing the injury to the defendants and such do not serve to defeat or cut down the completeness or full benefit of the grant. All such relate to the manner of enjoyment and nothing more.

Under such circumstances, these provisions which it is asserted create indefiniteness, defeating specific performance, are not of the essence of the contract but are collateral thereto and such doctrine has been repeatedly approved by the courts. A parallel situation often arises under contracts of insurance respecting provisions for arbitration and the like, and the rule to be applied is stated in Fry on Specific Performance (5th ed. § 380) in the following words: " It is perhaps impossible to lay down any general rule as to what is sufficient certainty in a contract, but it may be safely stated that the certainty required must be a reasonable one, having regard to the subject matter of the contract and the circumstances under which and with regard to which it was entered into. Thus in a case where there was a contract between two railway companies that the one should

have the right of running with their engines, carriages and trucks, and carrying traffic upon the line of the other, PARKER, V. C.,* held that this was not too uncertain to be enforced. ' It means,' he said, ' a reasonable use — a use consistent with the proper enjoyment of the subject matter and with the rights of the granting party.' "

Again he says, at section 345: "With regard to the description of the subject matter, the maxim of '*id certum est quod certum reddi potest*' applies." (See, also, *Conger* v. *Ensler*, 85 App. Div. 564; *Weir* v. *Barker*, 104 id. 112; *Mutual Life Ins. Co.* v. *Stephens*, 214 N. Y. 488; *Chainless Cycle Mfg. Co.* v. *Security Ins. Co.*, 169 id. 304.)

In the case of *Uhrig* v. *Williamsburgh City Fire Ins. Co.* (101 N. Y. 362), in treating of the arbitration clause in an insurance policy, the court said: "Under the arbitration clause, it was the duty of each party to act in good faith to accomplish the appraisement in the way provided in the policy, and if either party acted in bad faith so as to defeat the real object of the clause, it absolved the other party from compliance therewith; and if either party refused to go on with the arbitration, or to complete it, or to procure the appointment of an umpire so that there could be an agreement upon an appraisal, the other party was absolved."

If these grants had been silent as to the manner of enjoyment, under a wealth of authority they could be specifically performed or protected by injunctive relief. The appellants are not here seeking enforcement of the restrictive provisions as to enjoyment. Their attitude has amounted to a refusal to accept the benefits of such provision in their favor. They repudiate the contract and seek, in these provisions as to enjoyment, to find sufficient indefiniteness to defeat the entire instrument. Such efforts must fail. The defendants have breached their contract, in these particulars, and they cannot be heard in a court of equity to assert their own breach in support of claimed invalidity flowing therefrom. (*Castle Creek Water Co.* v. *City of Aspen*, 146 Fed. Rep. 8.) Their refusal to carry out the provisions of the agreement amounts to both a waiver of such and a breach of the contract by them.

---

* *Great Northern Ry. Co.* v. *Manchester, etc., Ry. Co.* (5 De G. & Sm. 138).— [REP.

If it were essential to relief in this action, no doubt a court of equity could, by mandatory provision, compel the defendants, even now, to select an engineer and participate in conferences as contemplated by the contract. (*Smith* v. *Rector, etc., of St. Philip's Church,* 107 N. Y. 610.) But such a course is not necessary.

It is next urged by the appellants that such contracts are unconscionable and unilateral, so that equity will not enforce them. We are cited to voluminous authority to sustain the general legal doctrine that equity will not enforce unilateral contracts or contracts which look only to the preservation of the rights of one party thereto. With such authority there can be no quarrel, but no such contractual situation is presented by this record. Concededly, at the time of the execution thereof, there were numerous and substantial disputes pending. The contracts made ample provision for the settlement and adjustment of all such disputes, and fixed and determined the future rights of the parties to the waters theretofore in dispute. The many and substantial benefits thereby secured by the appellants have been availed of by them under said contracts. It cannot be that a party may thus grasp at and acquire the benefits of a contractual situation and, at the same time, repudiate its burdens.

In further effort to spell out equitable defense the appellants have indulged in severe criticism of the engineer Herschel and his participation directly or indirectly in the provisions of these contracts. Such are not justified from any viewpoint by this record. The only contractual provision appearing to have resulted from anything Herschel did is the mathematical computation of the cubic feet per second to which the defendants were entitled. It is significant that although Herschel is assailed, there seems to be no suggestion that his computations were, in any sense or particular, inaccurate or erroneous.

About the only thing of substance which these contracts take from the appellants is their claimed right to put their turbines at a lower level and thereby increase their horsepower developed in this manner. That right is distinctly limited by these contracts and so definitely treated of therein as to compel the conclusion of definite purpose and intent to reach that result. But it is open to serious question whether even

that provision affected the defendants in any material degree. The lowering of the point of operation of the turbines would, of necessity, entail a new point of discharge of the waste water therefrom and, undoubtedly, would involve the construction of either a tunnel or canal through or over the plaintiff's lands. It may, therefore, be doubtful whether, if these contracts had not been made, either defendant could have made any such change against the wishes of the plaintiff. Be that as it may, there was definite purpose to finally terminate any such claim.

The provisions of the contract requiring the defendants to submit to the inconvenience of suspended operations, for limited periods, are coupled with corresponding provisions for payment of damages entailed thereby at figures which are not nominal. Hence, all such matters were the subject of calm and deliberate adjustment in this contractual situation, and there is no room for holding these contracts to be unconscionable or oppressive in any degree.

The appellants further assert that the doctrine of laches should defeat these actions, inasmuch as there was no effort to enjoy these privileges for nearly fifteen years. The defense of laches sounds in estoppel. It only becomes available when the failure to assert the right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a long lapse of time. (*Kellogg* v. *Kellogg,* 169 App. Div. 395.)

There is effort upon the part of the appellants to spell out a change in circumstances during this interim, of sufficient moment to justify application of the doctrine of laches, but such effort has not proven fruitful. About the only substantial change lies in enhanced values of electric power for manufacturing and like purposes. All such enhancement in value has been only that which necessarily and obviously would come in connection with the development of business and manufacturing conditions. There is nothing that we can say has arisen unforeseen and not fairly within the contemplation of these parties when they made this contract. Natural progress and development, resulting in increased values, could afford no such basis and, hence, we are led to the single remaining argument that the long lapse of time alone justifies application of the doctrine. Obviously, such claim is unsound.

The contract, in its express provisions, recognizes the fact that the right was not to be enjoyed until some time in the future. The parties contracted, definitely, for the postponement of the enjoyment of the right granted; and the time of such postponement was, purposely, left indefinite. Under such circumstances we cannot say that the time which elapsed was so long as to give rise to a presumption of abandonment. There being no room for the application of the doctrine of laches, as predicated in estoppel, the claim by the appellants, in this particular, must fail.

The claim is next made that the merger between the plaintiff and its predecessor was inoperative to carry over the contractual rights invoked in this action, and such contention is predicated in *Irvine* v. *New York Edison Co.* (207 N. Y. 425). Abstractly, such authority does not reach the result claimed. That case merely holds that, where one corporation is acquired by and merged into another, under section 15 of the Stock Corporation Law, and the latter has not contracted to pay the debts of the former, in the merger is to be found no reason for permitting a creditor of the merged corporation to maintain action on his debt against the possessory corporation since there is no provision in the statute making the possessory corporation liable for the debts of the merged corporation. The entire argument of that authority proceeds on the statement that there was there no assumption of indebtedness, either by virtue of statute or expressly in the merger proceedings. Such argument distinguishes the present case. In this case, for two reasons, there has been definite adoption of the burdens of this contract by the plaintiff. Such arose, *first*, because the board of directors of the plaintiff corporation have, definitely, by resolution, assumed all the obligations of its predecessor. *Secondly*, even if that were not so, the effort of the plaintiff in this action to establish its right of enjoyment of the benefits of this contract, by the plainest doctrines of estoppel, would necessarily preclude repudiation of the burdens of that contract. Most clearly, the plaintiff could not seek to enforce the benefits, as it has in this action, without taking over the corresponding burdens.

Therefore, in this claim of privity on the part of the plaintiff is to be found no reason for disturbing the results reached.

And, lastly, appellants complain, somewhat bitterly, of their failure to have procured the trial court to pass upon requests to find. It appears that, informally, Mr. Justice WHEELER informed one of the defendants' counsel that he probably could not take up the decision of these cases until subsequent to his summer vacation. His matters shaped themselves, however, so that he was able to and did decide these cases prior to his vacation, and the defendants now claim that they postponed submission of requests in the belief that ample time to file same would be given them, in the light of Mr. Justice WHEELER's statement as to a postponement of the decision. The decision was made before any requests were filed.

It is unfortunate, of course, that such a misunderstanding arose. Eventually, Mr. Justice WHEELER determined that, having decided the case, he could not thereafter lawfully pass upon such requests, as his functions in the matter had ceased with his decision. He, therefore, denied the application of appellants to pass upon their requests and observes in his opinion his regret for the misunderstanding and recites therein the power of this court to amply protect all parties upon the facts.

This situation has given rise to acrimonious claims between counsel relative to proposed requests attached to appellants' main brief as an appendix. In view of this situation, it probably is best that this court pass upon such request, as it has the undoubted power to do.

A number of findings suggested set forth excerpts from various conveyances, and the claim is made by respondent that such excerpts do not fully disclose the tenor of such instruments. That argument may be fully met by making the findings refer to the instruments in full.

All of the requests have been passed upon and our decision thereon will be embodied in the order.

These views lead to an affirmance, which is recommended, with costs in each case.

All concur.

In each case, judgment affirmed, with costs. Additional findings of fact made as stated in order filed.