In the Matter of the Accounting of MARY T. TONER, as Executrix of JOHN J. DWYER, Deceased Executor of MARY I. McDONALD, Deceased.

Surrogate's Court, Bronx County, July 18, 1951.

*Hogan, Kelleher & Bill* for executrix, petitioner.

*Frederick S. Rauber* for Aline I. McDonald and others, objectants.

HENDERSON, S. This is a proceeding to settle the account of an executor who died on November 18, 1948. The account covers a period of seventeen years and is filed by his executrix.

The testatrix died on December 17, 1931. Letters testamentary were issued to the executor, an attorney, on January 14, 1932.

The assets of the estate consisted of cash and personal property amounting to $35,352.36, and real property having an equity of $1,750.

Under the terms of her will, after the payment of certain cash bequests, gifts of jewelry and household effects, in all aggregating the sum of $2,977, testatrix gave her residuary estate to the executor to be held by him in certain designated trusts for the benefit of her three children, three grandchildren and a daughter-in-law, all of whom survived her. At the time of the death of the testatrix, the grandchildren were infants, the youngest being five years of age.

As a result of objections to the account, issues requiring the consideration of the court have been presented.

The executor has been charged with negligence for having retained the realty of which the testatrix died seized. It appears that he maintained and operated this property until his death and incurred a loss of $14,403.52 for which a credit is sought in this proceeding.

In 1932 when the executor took over the management of the realty, it had an equity of $1,750. In the first year of its operation the total expenses which included repairs, payments

of mortgage principal, interest and taxes, amounted to $1,605.81. Since the income was $1,293, a net loss of $312.81 was suffered. In the year 1933, the expenses were $1,352.83 while the income was $665. In 1934, the expenses were $3,734.99 with an income of $791. A continuous loss was incurred until 1939 when there was a net gain of $236.01.

The court is of the opinion that an executor employing diligence and prudence in the care and management of this real estate would not have made any expenditures subsequent to the year 1933 after having sustained a net loss of $1,000.64.

The interest of the estate was small. The frame buildings were over twenty years old and in poor condition. The valuation of the property was at all times in excess of the mortgage incumbrances. With the enactment of the moratorium laws (Civ. Prac. Act, § 1077-a *et seq.*) in August of 1933, any liability of the decedent's estate in excess of the value of the property as a result of the bonds executed by her was prevented.

In holding the property under these circumstances, the executor neglected his duty. It was incumbent upon him to negotiate with the mortgagees for the delivery of a deed in lieu of foreclosure or to abandon the property.

The petitioner asserts that the objectants acquiesced in the conduct of the executor.

While the delay of the objectants for a period of seventeen years in seeking to enforce their rights is surprising, it must be observed that the executor was the decedent's friend of long standing and a close relationship between him and the children existed.

The evidence clearly shows that the children placed themselves entirely in the hands of the executor. They had complete faith in his judgment and relied upon him to protect their interests and the interests of their children who were infants until late in the administration of the estate.

In furnishing the defense of acquiescence, the petitioner must prove that the alleged acts of ratification were performed with full knowledge of all the material facts relating to the transactions and a complete appreciation and understanding of their resulting rights. This has not been done.

Acquiescence is not shown by silence or inaction (*O'Connor v. Collins*, 239 N. Y. 457, 462). Mere indulgence to a wrongdoer without demonstration of a change in position in reliance thereon has never resulted in the creation of an estoppel (*Hydraulic Power Co.* v. *Pettebone-Cataract Paper Co.*, 198 App. Div. 644, 653).

The executor will therefore be denied credit for losses sustained subsequent to 1933 in the sum of $13,202.88, and will be surcharged with the following yearly losses, with interest from and including the year of the loss to the date of the decree to be entered hereon as follows:

| | |
|---|---:|
| 1934 | $2,943.99 |
| 1935 | 861.61 |
| 1936 | 1,843.48 |
| 1937 | 295.22 |
| 1938 | 1,186.40 |
| 1940 | 1,023.04 |
| 1941 | 2,392.21 |
| 1942 | 3,202.68 |
| 1943 | 614.49 |
| 1947 | 4.26 |
| 1948 | 124.33 |
| 1950 | 157.42 |

The rate of interest will be commensurate with the average rate of earnings on trust funds during the same period. Against the amount due and owing, he will be allowed a deduction for the total gains in the sum of $1,246.25.

If the parties cannot agree upon such rate of interest, it will be fixed by the court.

In the year 1932 when the executor was appointed, he had on hand the sum of $26,050.58 in cash in addition to other personal property.

Instead of setting up the residuary trust as directed by the testatrix, the executor proceeded to make withdrawals aggregating $15,388.98 for the purpose of paying his personal obligations to persons in other estates, to make unsecured loans to friends and to advance amounts to himself.

In the account as filed $8,075 of these withdrawals are claimed to be sums paid by the executor to himself for his legal services.

With respect to these alleged withdrawals for legal services, it has been held that this action on the part of an executor is improper (*Matter of Maas,* 38 N. Y. S. 2d 261). On the other hand it has been determined that the making of such payments did not constitute an impropriety and followed a procedure pursued over a long period of years (*Matter of Israel,* 176 Misc. 120, 124). Of course, these payments would be subject to final review as to reasonableness upon the judicial settlement of the fiduciary's account.

This court is of the opinion that any payments allegedly made on account of legal services should be allowed subject to the reasonableness of the payments, and this should be done even though the executor in his lifetime failed to designate such withdrawals as made for that purpose.

Accordingly it will be held that the withdrawal of $2,000 made on March 11, 1932, shown in the account as made in May, 1932, was a reasonable sum to be paid for all of the legal services rendered by the executor. Credit for this advance will therefore be allowed.

Credit for the withdrawals of $75 on October 11, 1932, $3,000 on March 16, 1934, and $3,000 on April 19, 1934, for the executor's legal services is denied.

Although designated by the accountant as withdrawals for legal services, these amounts were not taken by the executor for those purposes. The moneys were withdrawn for his personal needs. In so doing he committed a devastavit and therefore should repay these sums, with 6% interest computed from the date of the withdrawal.

Interest at the legal rate as computed by the objectant will also be required on the withdrawals " re Devlin Estate " and " re Cochran heirs ".

With respect to the unsecured loan upon which no interest has been received, the executor will be surcharged with interest computed at the average rate of earnings on trust funds, instead of the legal rate as computed by the objectants in their exhibit No. 8. No further interest on the " Kochler " loan will be charged to the executor.

Since the petitioner asserts that the estate never had any assets known as " Commercial Trust Co. of New Jersey " or as " J. P. Morgan ", the sum of $18.90 will be eliminated in schedule " A-2 " of the account. The request to credit the executor with the excess amount collected on the McDonald loan is denied.

The objectants have failed to show that income in the sum of $62.99 should be charged to the executor on whose behalf it is asserted that this amount was included in the sales price of the bonds of the Beneficial Loan Society, Inc.

With respect to the cash dividends which the objectants allege are not included in the account, the explanation of the petitioner with respect to the " Atlas " earnings is accepted. Since the amended account has included the cash dividends of $785 and $60 and the petitioner places the sum of $74.36 in the

unidentified deposits, no further cash dividends are shown to be missing from the account.

Schedule " A-2 " will also be increased by the sum of $109.58 shown by the objectants to be stock as a result of reorganization and stock rights which should have been included in the schedule to which should also be added the error of $70.40 in the addition of the total dividends.

The unpaid claims for legal services set forth in schedule " C-1 " are disallowed. Since the court has determined that the executor should have abandoned the realty, no allowance may therefore be made for the legal services relating to such property. The request for an additional allowance for the executor is not granted for the reason that the court has already allowed a reasonable fee which is to cover all of the legal services rendered in the estate.

The personal claims of the executor set forth in schedule " D-2 " are allowed as follows: $4,000 for the legal services rendered in the libel action and $500 for his legal services in protecting the decedent's interest in the La Bajada Copper Mining Company.

These claims will be allowed as a set off against the earliest surcharge which earns interest at the legal rate.

The item of $169.50 is disallowed since the executor has already collected the costs taxed in the libel action.

The expenditures of $50 for an appraisal of realty, and $125 for attendance of witnesses, set forth in schedule " C " as supplemented are disallowed. Upon consent the sum of $15 will be allowed for the witness, McCarrol.

The accountant's motion to charge Maida M. Sweeney with an additional advance of $245.14 is denied for lack of proof.

It is clear to the court that the payments made to the legatees, though secured by notes to the executor, were actually made out of the estate funds and not out of the executor's personal funds. The suggestion that interest be allowed on these payments is therefore without merit.

The release executed on January 22, 1934, by Margaret M. McDonald and the authorization executed by Allen J. McDonald, her husband, at the same time, effectively release any claim which Margaret M. McDonald may have against the executor. The recital of the receipt of $900 by Margaret M. McDonald was a proper recognition of the approximate amount of her share in the estate. However, since the advances made by the executor to Margaret M. McDonald and her husband were

considered by the parties as made in satisfaction of the claim of Margaret M. McDonald, the amounts shown in schedule " F " as sums advanced to Allen up to January, 1934, must be regarded as moneys paid to Margaret M. McDonald. The account should be amended accordingly.

Because of the manner in which the estate has been handled by the executor, no commissions will be allowed.

By reason of the surcharge imposed herein for the negligent retention of the realty, the decree to be entered hereon may vest title to such property in the executrix of the deceased executor upon payment of the amount of such surcharge (*Matter of Lyall,* 212 App. Div. 417).

The total surcharge to be imposed by the decree will inure only to the benefit of the objectants who represent five of the six persons interested in the fund which was to be set up in trust (*Matter of Garvin,* 256 N. Y. 518; *Matter of Ellensohn,* 258 App. Div. 891). The payments made to Margaret M. McDonald and for which the release was obtained, do not have the effect of reducing the amount of the surcharge. The fund to which the objections related constituted the estate which should have been set up in the various trusts after outright payment to Margaret M. McDonald. Upon such payment, her interest was carved out of the estate leaving a balance which is the subject of this proceeding.

The attorneys for the executrix of the deceased executor for their services in this proceeding will be allowed the sum of $1,500 without prejudice to asserting a claim in the estate of the deceased executor for the balance of such fee requested by them.

The court does not feel that in awarding this sum to the attorneys for the executrix of the deceased executor, they have been adequately compensated for their work in this proceeding. However, in fixing an allowance, the court is limited by the fact that a great portion of the services performed by the attorneys was required by the negligent activities of the executor.

Settle decree.