OPINION OF THE COURT
John D. Bennett, J.
During the course of the hearings in this private placement adoption resulting from the petition of the natural mother and her husband, the alleged father, to set aside the mother’s prior consent, terminate the adoption and obtain custody of the infant, the Supreme Court of the United States in Caban v Mohammed (441 US 380) declared section 111 of the Domestic Relations Law unconstitutional insofar as it permits an adoption of a child out of wedlock on consent of the mother but does not require a like consent of the father. The alleged father, who married the mother subsequent to the infant’s birth, thereupon moved to dismiss the respondents’ petition for the infant’s adoption on the ground that without his consent there could be no adoption. The adoptive parents challenged the petitioner’s status as the natural father.
The court by decision dated August 27, 1979, directed *132 that a hearing be had, limited solely to determine the status of the petitioner husband as the natural father of the infant. Hearings were held on October 9 and November 8, 1979. The sole witness on behalf of the father was the natural mother, and the sole witness for the respondents was the attorney who prepared the adoption papers and controverted the testimony of the mother. The natural father was present throughout the status hearing as well as all prior hearings. Neither the petitioners nor respondents called him as a witness.
Rather than draw any inferences from the failure of either party to call the alleged natural father as a witness, the court directed a further hearing be held on March 13, 1980, to afford the petitioner husband the opportunity to testify in support of his allegation that he was the infant’s father. The natural father testified at length on March 13, 1980, and was subject to extensive cross-examination by respondents.
A reading of section 522 of the Family Court Act would appear to limit paternity proceedings to the Family Court. In Matter of Salvatore S. v Anthony S. (58 AD2d 867), petitioner instituted a proceeding in the Supreme Court to have himself declared the father of the infant. Special Term, on its own volition, transferred the proceeding to the Family Court. The Appellate Division in reversing Special Term stated, “The purpose of this, action is to determine the status of the child and to determine the rights of all interested parties; a declaratory judgment action is the appropriate method to resolve the issues of this case. Therefore, the proceeding should not have been transferred to the Family Court”.
This court may not have jurisdiction to hear a paternity proceeding per se, but it does have the right and duty to determine the status of any party to a proceeding which is properly before the court. In a probate proceeding where petitioner questioned the status of a contestant, this court determined that the respondent was not a son of a decedent and therefore was not a distributee entitled to contest the propounded writing (Matter of Esther T., 86 Misc 2d 452; see, also, Matter of Fay, 44 NY2d 137 [the Surrogate in an *133 accounting proceeding determined that decedent was not a legitimate child]).
A careful review of all the evidence adduced by all parties leads the court to find that by a preponderance of evidence Jesus is the father of the infant, who is the subject of this adoption (Jaynes v Tulla, 70 AD2d 680).
The court directs that the hearing be continued on June 18, 1980 at 10:00 a.m. on all remaining issues relating to the necessity of the father’s consent including the alleged abandonment of the infant by her father, Jesus.