OPINION OF THE COURT
Richard C. Delin, S.
In this accounting proceeding, four of the beneficiaries under the will of Joseph B. Newhoff have filed objections to the accounts of Lawrence Cohen and George Angels, as coexecutors and cotrustees of one trust created for the benefit of the decedent’s two children, and the account of Lawrence Cohen, as sole trustee of two separate trusts. Trustee Angels cross-claims against his cotrustee and Rankow, Cohen & Isaacs, the attorneys for the estate, for any amounts for which he may be held liable to the objectants for imprudent investments. Mr. Cohen, the co-executor and cotrustee, is also a member of that firm. In addition, an action for malpractice against the same firm of attorneys brought by the decedent’s children was transferred from the Supreme Court, Suffolk County, and consolidated with this proceeding by an order dated January 24, 1979.
A hearing on these matters was concluded on May 29, 1980. On July 31, 1980, Surrogate Bennett retired. The Surrogate’s Court Procedure Act empowers this court to *591 decide the issues presented upon the whole record without the necessity of a hearing de nova (Matter of Female F. D., 105 Misc 2d 131; SCPA 209, subd 9).
The will and codicil, both dated February 10, 1972, were admitted to probate and the executors appointed on September 11, 1972. The codicil gives the residuary estate to the surviving spouse, Florence, and divides all proceeds from life insurance policies into three equal parts designated as funds “A”, “B” and “C” (Trusts A, B and C) of which Cohen and Angels were named as cotrustees of Trust B and Cohen sole trustee of Trusts A and C. Trust A is for the benefit of Florence; Trust B for the two children, Paul and Ellen; Trust C for the decedent’s mother, Ruth. Mr. Cohen initially filed the trust accounts for the period November 5, 1972 to December 27, 1976, which was final as to Trust B, and amended accounts for Trusts A and C, which are intermediate accountings for the period November 5, 1972 to October 15, 1978. The amended executors’ account covers the period March 7, 1972 to October 15, 1978. All of the accounts have been adopted by Mr. Angels as cofiduciary.
Item No. 1 in the amended objections dated November 14, 1978, filed by Florence, concerns the losses which resulted from investments in Real Estate Investment Trusts (REITS) on the grounds that they were speculative and unproductive. This objection is virtually identical with Item No. 1 of Ruth’s amended objections dated November 14, 1978, and Items No. 4 and No. 5 of Paul and Ellen’s revised objections dated January 16, 1978.
It is the contention of the beneficiaries that the fiduciaries invested in highly speculative securities and that the original investments, as well as subsequent investments, were imprudent. The fiduciaries in turn maintain that these were prudent investments and that the losses were due to an economic depression which they could not foresee and over which they had no control.
They further contend that Florence Newhoff is estopped from objecting to the investments and that Paul and Ellen are likewise prevented from objecting since they executed releases purporting to absolve the fiduciaries from liability.
*592 With respect to Trust B where he is cotrustee, Angels asserts that he played no active role in purchasing these securities, and that he is therefore not liable to the beneficiaries.
Each of the trusts were funded with' $77,643.52 from insurance proceeds. The first investment in REITS was made in November, 1972. The trustees’ accounts indicate that the increase from the sale of securities in Trust A was “0” and that the decrease was $5,018.38 attributable to investments in REITS. In Trust B, the increase from the sale of REITS was “0” and the decrease $57,813.85 attributable to REITS. In Trust C, the increase from the sale of securities was $3,490.89 and the decrease attributable to the sale of REITS was $4,584.24.
The trustees contend that they cannot be held liable for a loss which occurred during a period of general economic decline. There was little testimony as to the general economic situation during the period of the accounts, although one expert witness testified that the decline in the value of the REITS was accompanied by a decline in the stock market as a whole.
Numerous decisions support the theory that in times of economic stress leniency should be shown towards fiduciaries who hold securities in a failing market (Matter of Cuddeback, 168 Misc 698; Matter of Beadleston, 146 Misc 548; Matter of Winburn, 140 Misc 18). A trustee is not liable for events which he could not foresee (Matter of Balfe, 152 Misc 739, mod 245 App Div 22; Matter of Thompson, 41 Misc 420, affd 87 App Div 609, affd 178 NY 554). A wisdom developed after an event and having it and its consequence as a source is a standard no man should be judged by (Costello v Costello, 209 NY 252).
However, the theory which deals more liberally with a trustee for retaining securities in a declining market applies only to a situation where the fiduciary receives securities as an asset of the estate when he assumes his office (Matter of Clark, 257 NY 132).
Where the trustee himself acquires the stock on behalf of the estate and retains it through a period of economic decline, he may still be absolved from liability on the *593 grounds that he could not foresee the economic downturn which occurred provided that the initial investment was proper. The court must look, however, to the initial investment to see whether it was prudent.
The prudence of an investment must depend upon a balanced consideration of each individual investment at the time that it was made (Matter of Bank of N. Y., 35 NY2d 512). Important considerations for a trustee are capital structure, competency of management and whether the stock is a seasoned security with a history of productive return over a long period of time (Matter of Hall, 164 NY 196; Matter of McDowell, 102 Misc 275, mod 184 App Div 646, mod 230 NY 601; Current Investment Questions and the Prudent Person Rule, 13 Real Property, Probate and Trust Journal, 650, 657).
The expert who testified on behalf of Cohen stated that the REITS in question were merely extensions of investments which the banks had made prior to the time that these trusts began to develop. The fact is, however, that the REITS in which the trustees invested existed in their current form for only a short period prior to the time that they made the investments and there was no solid history of a productive return upon which they could base a decision that each REIT was a proper investment. The following dates are those on which the trusts were organized according to Standards & Poors NYSE Stock Reports: Continental Illinois Realty, 1969; Diversified Mortgage Investors, 1969; Midland Mortgage Investors, 1969; State Mutual Investors, 1970; Tri-South Mortgage Investors, 1970.
The prospectus reports which the trustee offered in evidence and on which he relied warned that the particular REITS were subject to the substantial risk of adverse changes in the interest rates, the availability of permanent mortgage funds, local conditions and the ability of the builder to control costs and conform to plans. Publications such as the Realty Trust Review, also in evidence, recommended the purchase of selected REITS but warned against their vulnerability to a change in interest rates.
The trustee is not charged with forecasting economic conditions. He need not be clairvoyant, but he is charged *594 with the responsibility of recognizing that the kind of investment which may be appropriate for an individual investor seeking to reap substantial profits is not suitable for a trust.
The primary objective of a trustee should be preservation of the trust rather than enrichment of the beneficiary. The duty of a trustee is to keep the funds entrusted to him in a state of security productive of income and subject to future recall (Matter of Young, 249 App Div 495, affd 274 NY 543). A trustee should strive for reasonable income and preservation of the principal of the trust (EPTL 11-2.2; 3 Scott, Trusts, § 227.5). He may not speculate.
Moreover, a trustee must always keep in mind the purpose for which a trust was created. Particularly, in the case of the children’s trust it is clear that the decedent was concerned about preservation of the principal, his codicil specifying that the trust was not to terminate until each child reached the age of 35.
A trustee may take risks with the funds in his charge provided that he receives the consent of the beneficiaries. When a cestui que trust has consented to or concurred in the breach of trust or has subsequently acquiesced in it, he cannot afterwards proceed against those who would otherwise be held liable therefor (Vohmann v Michel, 185 NY 420). Here the fiduciaries have attempted to justify striving to maximize income because Florence expressed her dissatisfaction with the size of her trust and the expected return.
Even so, to establish ratification by a beneficiary, it must be clearly proved that the ratification was done with full knowledge of all material facts relating to the transaction (Matter of McDonald, 201 Misc 844). The beneficiary must have knowledge of any defects in the act to be confirmed and the right to reject or ratify it (Matter of Ryan, 291 NY 376; Matter of Young, 249 App Div 495, affd 274 NY 543, supra). The testimony indicates that while Florence expressed a need for substantial income, she neither authorized the initial nor subsequent investments in REITS nor ratified them. The beneficiary could not ratify or authorize investments if she did not know *595 the precise nature of the investments, and the experience or inexperience of the trustees in applying the strategies selected (Bines, The Law of Investment Management, par 7.05, subd [2], cl [b]).
Cohen claims that he should not be surcharged because he secured information from various sources as to the investments made. However, this is only one aspect of the prudent man rule (EPTL 11-2.2). Having made the investigation, the trustee is under a duty to exercise a reasonable degree of skill in selecting an investment (Matter of Hall, 164 NY 196, supra), and as previously emphasized, his primary concern should be the preservation of the funds invested and the income to be derived from the investment. Measured against this standard, it is clear that trustee Cohen selected investments in an effort to maximize income without regard to the magnitude of the risks involved (see Johnston, Prudence in Trust Investment, 8 Univ of Mich J of Law Reform, 491, 495). Taking all the facts into consideration, the court concludes that the investments in REITS were imprudent for these trusts.
Numerous jurisdictions follow the rule set forth in the Restatement of Trusts (2d), which requires a fiduciary to refrain from investing a proportionately large part of the trust estate in a particular type of security (Restatement, Trusts 2d, § 228). New York does not require diversification (see, e.g., Matter of Montant, 72 NYS2d 318, affd 274 App Div 751; Matter of Beebe, 52 NYS2d 736, affd 268 App Div 1051).
The New York cases do hold, however, that the investment of a large portion of trust funds in a single security; coupled with other elements of hazard may be the-hasis of a finding of imprudence (Durant v Crowley, 197 App Div 540, affd 234 NY 581). The adoption of . a rule which requires diversification beyond this point would not only protect the beneficiaries of trusts but the fiduciaries as well. This case illustrates the dire need to re-examine New York’s minority position that diversification per se is not required.
The measure of damages where the initial investments are found to be imprudent is the amount of funds invested *596 plus the legal rate of interest from the date of the investments with appropriate credits for the moneys received on account of such investments (Gould v Gould, 126 Misc 54; Matter of McDowell, 102 Misc 275, mod 184 App Div 646, mod 230 NY 601, supra). All of the REITS in the children’s trust have been liquidated and the losses realized. However, some of the REITS still remain on hand in Trusts A and C and the losses not yet realized. Nevertheless, the damages are required to be computed at this time (Matter of Bank ofÑ. Y., 35 NY2d 512, supra) based upon the same measure of damages as set forth above giving credit for the present value of the security as against the loss.
The cotrustee of fund B contends that he is not liable to the beneficiaries for any losses since Cohen and his law partner, Martin Rankow, took it upon themselves to determine which investments should be made and Cohen purchased the securities without consulting Angels. Angels testified that he assumed the responsibility of acting as liaison between Cohen and the children and also undertook the task of determining from the insurance company, in which both he and the decedent worked, the amount of renewal commissions to which the estate would be entitled.
It is undisputed that Cohen made the purchases of stock and forwarded the checks to Angels to cosign. It is also undisputed that the checks were usually forwarded with a covering letter and a receipt for each of the purchases which had been made. Angels testified that he did not review the receipts but signed the checks and forwarded them to the broker.
While a fiduciary is not liable for the acts of a coexecutor, which he has no means of preventing or guarding against, he is still bound to a degree of watchfulness and care (Earle v Earle, 93 NY 104). The fiduciary may not turn over the management of the funds to the cofiduciary and thereby escape liability (Matter of Niles, 113 NY 547; Earle v Earle, supra). He is required to inform himself with respect to the affairs of the trust and inquire as to the use of the assets under his control. So far as the trustee permits his cotrustee to dominate the manage *597 ment of the estate, he must assume the responsibility for his cotrustee’s acts (Gould v Gould, 126 Misc 54, supra). Moreover, alleged good faith on the part of a fiduciary forgetful of his duty is not enough to exonerate him from responsibility (Matter of Rothko, 43 NY2d 305).
In the present case, the assets of Trust B came under the control of both Cohen and Angels. Both were charged with the responsibility of protecting the funds. Angels, in failing to object to purchases made for the fund did not thereby absolve himself from liability to the beneficiaries. Angels’ contention that control over the assets of the estate was usurped by his cofiduciary is unconvincing. Angels had every opportunity to question his cofiduciary with regard to purchases and if not satisfied, force him to prepare a proper account. Not only did he fail to participate generally in the decision making process concerning the purchase of REITS, he also failed to review the purchases and make independent inquiries regarding them. Moreover, Angels’ correspondence with Cohen indicates that he understood his duty as a fiduciary to act prudently with regard to investments made for Trust B. If it were found that Angels delegated his responsibilities to Rankow, Cohen & Isaac rather than his cotrustee, the result would be the same. Having accepted a trust, a trustee has no power to delegate such authority (Matter of Osborn, 252 App Div 438). As to the letter executed by Angels and forwarded to Cohen, the document consists of primarily self-serving statements. Angels’ self-serving statements are hardly persuasive on the question of mismanagement of the estate.
The objections to the investments in REITS are sustained and the cotrustees surcharged for the resultant losses. The parties are directed to submit computations of damages sustained as a result of the imprudent investments in accordance with the directions previously given.
The action for malpractice, which was transferred to this court, is brought by the children as beneficiaries of Trust B. The complaint charges that the defendant law firm negligently and carelessly counseled and advised the trustees to invest in the REITS, which were highly speculative and imprudent fiduciary investments. The answer *598 relies on the defense of the Statute of Limitations and that the plaintiffs have no standing to bring the action and release.
While the requirement of privity of contract in the attorney-client relationship appears to have eroded in other States, it is still, nevertheless, an essential element in New York (Victor v Goldman, 74 Misc 2d 685, affd 43 AD2d 1021; Maneri v Amodeo, 38 Misc 2d 190). Accordingly, absent privity of contract any alleged negligence here by the defendants would not be actionable by beneficiaries. This does not mean that the beneficiaries are remediless since they have already been awarded a recovery against the fiduciaries (which would prevent them from claiming any loss in the malpractice action). Moreover, in an estate situation the normal sequence is for the beneficiaries to seek redress from the fiduciary and then for the fiduciary to seek exoneration by a malpractice action against his attorney (see, e.g., Flynn v Judge, 149 App Div 278; Meiselman, Attorney Malpractice Law and Procedure, pp 223, 224).
Since lawyers are expected to know what is proper and improper pursuant to law and to advise their clients accordingly (Meiselman, Attorney Malpractice Law and Procedure, pp 14, 15), it would, in any event, only be Mr. Angels, as one of the executors and trustees, who could complain that he had not been properly advised as to the function of a fiduciary, that he was required to adhere to the prudent man rule in making investments and that his ultimate responsibility in making those investment judgments was a nondelegable discretionary power (Matter of Palmer, 132 NYS2d 311). Even then, however, Mr. Angels would have to establish that the investment losses were proximately caused by the failure to properly advise him and that but for such failure the loss would not have occurred (Garguilo v Schunk, 58 AD2d 683; Creative Inception v Andrews, 50 AD2d 553; Carpenter v Weichert, 51 AD2d 817). For all of the above reasons, the complaint is dismissed.
In a “supplemental affidavit and cross claim,” Angels seeks exoneration of any surcharge against him for improper investments made by claiming that Cohen and *599 his law firm are liable over to him for any such amounts. Presumably this would be based upon a theory of malpractice as outlined above.
It was Angels’ burden to establish that the attorneys departed from the usual and customary practice within the particular profession in not advising him of his duties and obligations as a trustee and that such failure was the proximate cause of the investment losses sustained. Mr. Angels claims that he told Cohen he was inexperienced in investments and that all he wanted to do basically was act as a family friend and intermediary between the children and the attorneys. While he claims to have relinquished any role as an investment advisor in making judgments as to investments, nevertheless, it is clear that his letter of November 16, 1972, to Mr. Cohen in which he made a suggestion that National Investors Corporation, a mutual fund, be purchased, was such an exercise in discretion. Part of that letter reads,
“I doubt that anyone could find fault or imprudence in the use of this mutual fund.
“With respect to a choice between an income and a growth fund, I lean to the growth funds”.
The letter continues on in an analysis of the income and average annual growth rate of National Investors. It is difficult to conclude, especially from this letter, that Mr. Angels was uninformed about his role and did not actively participate in it. While in the other investment decisions he chose not to become involved for one reason or another, it has not been clearly established that any failure on the part of the attorneys to advise him properly was the proximate cause for the losses sustained. His cross claim is accordingly dismissed.