In the Matter of the Estate of GEORGE WALSH, Deceased.

Surrogate's Court, Suffolk County, March 28, 1932.

*Burke & Burke* [*Arthur V. McDermott* of counsel], for the petitioner.

*John C. von Glahn*, for Elsa Walsh.

*Syrena H. Stakpole*, for Judy MacRae Walsh.

PELLETREAU, S. George Walsh died on or about the 31st day of January, 1925, leaving a will probated in Suffolk county. His brother, William W. Walsh, and his son, George Prentiss Walsh, qualified for executors and trustees.

Among other provisions the will contains the following:

" *Fifth.* I give, devise and bequeath to my executors and trustees hereinafter named, the remaining six-sevenths (6/7) of my estate, in trust, nevertheless, for the following uses and purposes:

" I direct them to invest the same and to receive the rents, incomes and profits thereof and to pay over the same to my beloved wife, Elsa von Hollifer Walsh, until she shall die or remarry. Upon the death or remarriage of my beloved wife, Elsa von Hollifer Walsh, I will and direct that my said trustees hereinafter named pay over, and I give, devise and bequeath the principal of said trust fund, to my beloved son, George Prentiss Walsh, if he shall be then living. If upon the death or remarriage of my said beloved wife, Elsa von Hollifer Walsh, my said son, George Prentiss Walsh, shall not be living, I will and direct that the principal of said trust fund be paid over, and I give, devise and bequeath the same to the wife or children of my said beloved son, George Prentiss Walsh, who shall be then living, in equal shares or parts; and if he shall leave neither wife nor children him surviving, then, and in that event, I will and direct that my said trustees shall pay over the principal of said trust fund, and I give, devise and bequeath the same to, the sons and daughters who shall be then living of my brothers and sisters, share and share alike.

" *Sixth.* I hereby nominate, constitute and appoint, my brother, William W. Walsh, Jr., and my son, George Prentiss Walsh, Executors and Trustees of this my Last Will and Testament, giving and granting unto them, or the survivor of them, full power to mortgage, lease or sell any and all of my real or personal estate, upon such terms and at such times as shall to them, or the survivor of them, seem best, and I hereby direct that my said executors and trustees serve without being required to give bonds."

The transfer tax proceedings on file in the surrogate's office show a net estate of $20,923.45.

George Prentiss Walsh aforesaid died on or about December 31, 1928. The assets comprise real estate at Babylon, N. Y., still intact, and certain securities. While George Prentiss Walsh was alive, he, with the consent of his uncle, William W. Walsh, performed most of the duties of the trust and had the custody of the securities. Shortly after his death it was learned that practically all of the securities had disappeared.

The testimony indicates that the said George Prentiss Walsh

appropriated same to his own use. The evidence, the testimony and attitude of William W. Walsh, the coexecutor and cotrustee, very clearly indicate to my mind that he had no part in such misappropriation of the trust funds. I believe him to be an honest man who trusted implicitly in the said George Prentiss Walsh, his nephew. It was stipulated upon the trial that the total amount of the shortage as of December 31, 1928, was $8,000. That sum measures the liability of William W. Walsh, if he be answerable for the misappropriations of his coexecutor.

He, the said surviving executor and trustee, is now rendering his final account, and the contestants seek to make him answerable for the loss. To my mind the contestants cannot succeed unless they establish that the said William W. Walsh was negligent in allowing his cotrustee to assume possession and control of the assets.

The personal relations between William W. Walsh and the said George Prentiss Walsh clearly indicate that William W. Walsh had implicit trust and confidence in George Prentiss Walsh, his nephew, and there is nothing to show that he, the said William W. Walsh, had any intimation or that anything was brought to his attention to arouse his suspicion that his nephew was dishonest.

The evidence shows that William W. Walsh was absent from the State from six to nine months each year. That made joint possession or control of the assets and bank account impracticable. The circumstances justify such action. It was not unnecessary to intrust such management and control to a coexecutor. (*Matter of Halstead*, 44 Misc. 176; affd., 110 App. Div. 909; affd., 184 N. Y. 563.)

William W. Walsh testified that he had known George Prentiss Walsh intimately since childhood; that both Mrs. Walsh and he had named George Prentiss Walsh as executor without bond under their wills, which were still in effect at the time of Prentiss' death; that on his absences in Europe he had been accustomed to intrust all his financial affairs to Prentiss and left with him a large number of checks signed in blank with never the slightest irregularity, nor was there the slightest intimation or circumstance to arouse his suspicion.

An executor or trustee who does no wrong cannot be held liable for acts of his coexecutor or trustee where it appears that he was not negligent or lacking in due care. Under the circumstances it is not negligent to intrust possession of assets of an estate to an associate. (See *Wilmerding* v. *McKesson*, 103 N. Y. 329, wherein, among other things, it was held: "An executor or trustee is not a

guarantor for the safety of the securities which are committed to his charge * * *") (p. 339). "For the devastavit of a coexecutor or trustee an executor or trustee is not liable unless it appears that he had knowledge or assented to the acts done, or had notice which should excite his suspicion and put him on inquiry This rule is fully sustained by the authorities" (p. 340). Also, note *Matter of Hoagland* (79 App. Div. 56), quoting *O'Conner* v. *Gifford* (117 N. Y. 275): "The question of the case is 'whether the conduct of the executor has been guided by good faith, reasonable judgment and an intention to fairly and fully discharge his duty. If so, it cannot be that he should still be held liable for a devastavit.'"

There is no evidence to warrant the conclusion that anything was known by or brought to the attention of William W. Walsh that the character, habits or business management of George Prentiss Walsh were such as to create suspicion. (See *Cocks* v. *Haviland*, 124 N. Y. 426.)

It is true that William W. Walsh was a passive coexecutor and cotrustee. His merely permitting the other to possess the assets without going further and concurring in the application of them does not render him liable. (*Kavanaugh* v. *Gould*, 147 App. Div. 281, 291; *Hine* v. *Hine*, 118 id. 585, 588.)

Apparently George Prentiss Walsh immediately upon his appointment assumed and maintained exclusive possession and control of the assets. With the exception of the proceeds of the sale of one bond, no part, principal or income, passed through or into the hands of William W. Walsh. An interesting case upon that subject is *Nanz* v. *Oakley* (120 N. Y. 84). (See, also, *Matter of Westerfield*, 32 App. Div. 324, 339.)

There is another side to this case, and that is the attitude of one of the contestants, Judy McRae Walsh, the widow of George Prentiss Walsh. She lived with her husband, and I think the evidence sustains the conclusion that she knew of his dissolute habits and extravagant expenditures and that she knew of her husband's expenditure and waste of the trust funds. She should have told her husband's uncle, William W. Walsh, and put him on his guard. She did not do it. She is not now in a position to claim a benefit because of having withheld that information.

It is unimportant whether Mr. William W. Walsh, who is accounting herein, acted as executor or trustee. The authorities do not justify the importance of the distinction. (See *Matter of Halstead*, 44 Misc. 176; *Ormiston* v. *Olcott*, 84 N. Y. 339, and *Bruen* v. *Gillet*, 115 id. 10, 14.)

There seems no just reason why the payment of $11,055

to William W. Walsh should not be allowed in satisfaction of his claim against the deceased for money loaned. The promissory notes evidencing the claim and the canceled checks evidencing the advancement of the moneys were produced, and the transfer tax schedules verified by George Prentiss Walsh, the testator's son, recited the existence of the debt.

The account is approved and objections dismissed.

Decree accordingly.