Elmhurst National Bank, et al., Plaintiffs-Appellees, v. Iona D. Glos, et al., Defendants-Appellees.

Continental Illinois National Bank and Trust Company of Chicago, as Successor Trustees, etc., Defendant-Counterplaintiff-Appellee, v. Mabelle G. Larkin, George W. Larkin, Jr., Walter Larkin, Larry Larkin, Elizabeth Glos Larkin, a Minor, Linda Katherine Larkin, a Minor, Andrew Glos Larkin, a Minor, and George Walter Larkin, a Minor, Defendants-Counterdefendants-Appellants.

Gen. No. 67–144.

Second District

October 15, 1968.

Sidley & Austin, of Chicago, for appellants.

Wildman, Harrold, Allen & Dixon, Kirkland, Ellis, Hodson, Chaffetz & Masters, and Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago, and Thomas H. Price and Henry G. Bates, of Elmhurst, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court.

This appeal arises from a decision of the Circuit Court of DuPage County authorizing the Continental Illinois

National Bank and Trust Company of Chicago, as Successor Trustee under a Trust Agreement referred to as Trust 266, to retain shares of its own capital stock in the trust portfolio.

It appears from the pleadings that, in 1935, one Lucy M. Glos created a certain trust known as Trust No. 266. One fund created under this trust was to be held for the benefit of Albert Glos during his lifetime and then for the benefit of his widow, Iona D. Glos, during her lifetime. The trust agreement provides that if Albert and Iona leave no descendants, the trust funds should be divided equally between two sets of contingent beneficiaries, which for the purpose of this opinion shall be referred to as the "Larkin beneficiaries" and the "Bates beneficiaries." Albert M. Glos is deceased and his widow, Iona D. Glos, now the income beneficiary under the trust, is of advanced years. No children were born of the marriage. The instrument did not expressly allow the trustee to retain shares of its own stock.

In 1965, following the resignation of the then trustees under the trust, the Continental Illinois National Bank and Trust Company of Chicago was duly appointed as Successor Trustee. Among the assets of the trust fund, at the time Continental became successor trustee, were 3,798 shares of its own capital stock. This represented in excess of 22% of the total value of securities in the fund. The capital stock of all financial institutions owned by the fund was in excess of 61% of the total value.

Regulation 9, section 9.12 (a) issued by the Comptroller of the Currency and applicable to this situation provides:

> "(a) Unless lawfully authorized by the instrument creating the relationship, or by court order or by local law, funds held by a national bank as fiduciary shall not be invested in stock or obligations of, or property acquired from, the bank or its direc-

tors, officers, or employees, or individuals with whom there exists such a connection, or organizations in which there exists such an interest, as might affect the exercise of the best judgment of the bank in acquiring the property, or in stock or obligations of, or property acquired from, affiliates of the bank or their directors, officers or employees."

In this case, the original action was filed by the retiring trustees requesting approval of their accounts. Continental filed a counterclaim seeking instructions from the court as to whether it might properly retain its own capital stock as an asset of the trust fund.

The Larkin beneficiaries answered alleging that it was undesirable for the successor trustee to continue to hold and vote its own stock and also alleging that a disproportionate amount of the trust investments was in the hands of financial institution. Mrs. Glos and the Bates beneficiaries answered stating that they believed that a sale of Continental Bank stock would not be in the best interest of the trust.

When the matter came on for hearing the attorney representing certain of the Bates beneficiaries stated that he had available certain of his clients who were prepared to testify that they would prefer to have the Continental stock remain in the trust; that he also had available a trust officer of the Continental who was prepared to testify that the bank is extra cautious as to the conduct of a trust involving its own stock; that the amount of stock involved was but a small percentage of the entire stock of the bank and that in his opinion there would be no chance of any self interest or conflict of interest. The attorney for the Larkin interests stated that it was his position that the corpus of the trust is overly invested in the stock of financial institutions and that the trust should, in an orderly manner, divest itself of the Continental stock.

The trial court stated that he would not advise the bank as to whether or not to retain the investment of its own shares but that he would authorize the bank to keep the shares and an order was entered which provided that "Continental Illinois Bank and Trust Company of Chicago . . . may properly retain the shares of capital stock of the Continental Illinois Bank and Trust Company of Chicago presently held as an asset. . . ." This appeal is from that order.

In this court the Larkin beneficiaries contend that since there is no authority in the trust agreement for the retention of the shares and there is no authorization under State law for the retention of the shares that section 9.12(a) of the Regulations of Comptroller of the Currency requires the bank, as trustee, to divest itself of its own shares unless there is a valid court order authorizing their retention. They stipulated that had the witnesses referred to been called to testify they would have testified in accordance with the representation made by counsel and they further agree that they in no way impugn the integrity or competency of the successor trustee by their position.

It is the Larkin position that, even with a stipulation as to the testimony, there is no showing of any reason to the court to justify the retention of the shares in question and the burden of proof is on those seeking the retention of the shares.

The Bates beneficiaries, on the other hand, contend that under the Illinois "Prudent Man" statute, (Ill Rev Stats 1965, c 148, §§ 32 and 32.1a) the trustee is authorized to retain any type of investment provided the investment meets the "Prudent Man" test and they contend that the burden of proof is on the Larkins to offer proof as to why the shares should not be retained.

The Continental states that it is not in an adversary position in this proceeding, and is not asking permission

to hold the shares but only requesting instructions and to that extent is akin to an interpleader in this proceeding.

 We are presented with the question of who had the burden of proof in this proceeding. Under the interpleader cases, the procedure is to hear evidence on the issues made by the interpleader's complaint and the answers thereto. Thereafter, a preliminary decree should be entered determining whether or not the interpleader is rightfully in court. It is only after this has been accomplished that the court should conduct a hearing with respect to the rights of the various defendants. In the first hearing the burden of proof is on the interpleader. City Nat. Bank & Trust Co. of Chicago v. Dunham, 306 Ill App 354, 28 NE2d 812 (1940). There is no contention made in this case that the counterclaim filed by Continental was not appropriate and the other parties answered and appeared for the hearing without any objection. This is not a true interpleader situation but we feel that Continental's position was sufficiently presented to excuse it from any further obligations of proof.

The burden of proof therefore was on either the Bates or the Larkin interests to offer proof justifying their position.

 The "Prudent Man" statute, heretofore referred to, expressly allows a trustee to retain every kind of property, real, personal or mixed and every kind of investment, so long as he exercises the judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs. We are of the opinion that the statute is the "local law" referred to in Regulation 9, section 9.12(a) issued by the Comptroller of the Currency, and, therefore, negates its application in the case at bar.

 Having arrived at this conclusion it then necessarily follows that the burden of proof rests upon the

one who claims that the trustee has imprudently retained or invested trust funds contrary to the standard set forth in the above referred to "local law." The general rule is that a trustee is presumed to have acted in good faith and to have performed his duties under the trust. The burden of proving his breach of trust rests upon the one asserting it. First Trust Joint Stock Land Bank of Chicago v. Hickok, 367 Ill 144, 148, 10 NE2d 646 (1937). In the case at bar the Larkin beneficiaries assert that the trustee cannot lawfully retain its own stock and therefore the burden of proving such proposition rested upon them. Since the Larkin interests offered no evidence in the trial of the matter to overcome the cited presumption, they therefore failed to meet their burden of proof. Consequently, the judgment of the trial court must be affirmed.

The motion of Continental Illinois National Bank and Trust Company of Chicago to supplement the record in this cause, which was taken with the case, is allowed.

Judgment affirmed.

SEIDENFELD and DAVIS, JJ., concur.