459 P.2d 332

Beatrice LEFKOWITZ, now known as
Beatrice Globerman, Appellant,

v.

ARIZONA TRUST COMPANY, a corporation,
and Samuel Lefkowitz, now known as
Samuel Lefton, Appellees.

No. 2 CA–CIV 679.

Court of Appeals of Arizona.

Division 2.

Oct. 2, 1969.

George B. Morse, Tucson, and Wells & Herring, by E. Belmont Herring, Santa Monica, Cal., for appellant.

Holesapple, Conner, Jones, McFall & Johnson, by A. O. Johnson, Tucson, for Arizona Trust Co., Robertson & Fickett, by William S. Dunipace, Tucson, for Samuel Lefkowitz, for appellees.

HOWARD, Judge.

We have before us exceptions to a trustee's final accounting. Two among the several items challenged raise the question of whether, under the circumstances presented, the trustee was entitled to collect real estate commissions on the sale of trust property.

This litigation grows out of a divorce proceeding involving the appellant, Beatrice Lefkowitz, now known as Beatrice Globerman and the appellee, Samuel Lefkowitz, now known as Samuel Lefton. In order to facilitate a sale of the parties' real property and a division of the proceeds, the divorce decree provided for the various properties owned by the parties to be distributed to the appellee, Arizona Trust Company, in trust, for the following purposes:

> "The purpose of this Trust shall be to sell each and every parcel of the above described property, together with all improvements, furniture and furnishings thereon and therein contained and to manage, maintain and care for all of said property until such sales can be consummated."

After providing that the trustee was to sell each of the parcels at a price not less than 90% of certain stipulated values, the decree directed:

> "Until such time as the said property is sold the Trustee shall have the authority to lease the property, collect rents, pay all taxes, repair bills and other costs in connection with the property, to pay itself a salary as approved by the Court, to hold in reserve such sums as it deems necessary in connection with the property, to insure the property upon such terms as it feels best, and in all ways to handle the property as if it were its own. Each month the Trustee shall divide equally between * * * [Beatrice] and * * * [Samuel] any surplus on hand; *it shall also have power to consummate the sale of the property and after payment of all costs and charges incurred therewith* it shall divide the proceeds equally between * * * [Beatrice and Samuel]. The Trustee shall make annual accountings to the parties and to the Court and shall account more often if it so desires." (Emphasis added)

Arizona Trust commenced performing its duties as trustee, and filed its first annual accounting on April 13, 1966. No exceptions were filed with respect to this account by appellant, and it was approved and allowed by the court on April 26, 1966.

At all times prior to the latter date and for some months thereafter, appellant was represented by Attorney Robert S. Tullar. In September, 1966, appellant's present local counsel succeeded Mr. Tullar. Commencing in December, 1966, there was a protracted and contentious controversy between the parties as to when and upon what terms a parcel located in Chicago should be sold. There was no annual accounting filed by the trustee in 1967, but that fact in itself is not a basis of any asserted liability. The trust properties were eventually all sold at acceptable prices, and the trustee filed its final accounting on May 1, 1968. Appellant filed her exceptions and the trustee filed a supplementing final account on August 29, 1968. A hearing on appellant's exceptions was by agreement held before a court commissioner, after which a minute was entered denying all exceptions save one not presently in controversy, and an order was entered approving the trustee's accounts. Additional facts will be presented in the light of this basic background in connection with the individual exceptions urged.

## THE REAL ESTATE COMMISSIONS

■ The quoted terms of the decree provided for the trustee to be paid a monthly salary, and the trustee collected $310 monthly prior to the sale of the most valuable trust property, a commercial complex called Broadway Road Shops, in Tucson. After this sale, the trustee collected a salary of $100 per month. In addition, the record shows that the trustee received a real estate commission in the amount of $621.00 on the sale of a trust parcel in the San Clemente subdivision in Tucson, and a one-third-of-gross "listing broker's" commission on the sale of the Broadway Road Shops property. Both the $621.00 commission and the gross $16,750.00 sales commission of which the trustee's $5,583.33 commission was a part, were shown in the documents constituting the trustee's first annual account, but the *trustee's receipt* of the larger commission was not set forth until the supplemental final accounting.

While appellant asserts that the trustee violated its fiduciary duty of disclosure in not revealing earlier its receipt of the larger commission, her basic dollars-and-cents contention seems to be that the trustee was not entitled to the commissions and that it should be required to disgorge to plaintiff her one-half of their value.

The trustee's first line of defense is that the trial court's approval of the first accounting renders the issue *res judicata* in its favor. See Restatement, Second, Trusts, § 220, Comment *a.* The trustee's argument has force with respect to the $621.00 commission, which is clearly set forth in the first accounting in a manner which reasonably indicates that it was payable to the trustee or to one of its employee salesmen. We prefer, however, to dispose of both of these contentions on other grounds.

We note that there is authority holding that a trustee may not, because of potential conflicting interest, combine his role as such with that of a salesman of trust realty. Montaquila v. Montaquila, 85 R.I. 447, 133 A.2d 119 (1957). A real estate brokerage commission has been denied on this basis. In re Lundberg's Will, 197 N.Y.S.2d 871 (Surrog.Ct.1960). Another court has taken the view that a trustee who is also a real estate broker should be allowed extra compensation for the extraordinary brokerage service, but only to the extent of the reasonable value of the services actually performed under all the facts and circumstances of the case. Estate of Wichman, 27 Hawaii 780 (1924); and see also, In re Steed, 40 Pa.Dist. & Co.R. 1 (Com.Pleas 1940).

Comment *d.* under § 242 of the Restatement, Second, Trusts, reads in part as follows:

"*d. Extra services.* In the absence of a statute providing a definite rule fixing the amount of the trustee's compensation, a trustee who renders professional or other services not usually rendered by trustees in the administration of the trust, as for example services as attorney

*or as real estate agent,* may be awarded extra compensation for such services. In fixing the amount of such compensation the court will allow an amount which under all the circumstances it considers to represent the fair value of the services."

See also, III, Scott on Trusts (Third Ed.1967), § 242.2; and Bogert, Trusts and Trustees (Second Ed.1962), § 977, at 387 et seq. The latter authority states at pages 388–389 that "A showing of the performance of unusually skillful, arduous, or prolonged work should be required, and detailed proof should be demanded."

At least with respect to testamentary trustees in this jurisdiction, by statute, the compensation for services is that which the court adjudges "just and reasonable." A. R.S. § 14–1023; and see In re Dunlap's Estate, 38 Ariz. 525, 2 P.2d 1045 (1931). In view of the Restatement's explicit reference to real estate agents in the quoted Comment and the well-nigh universal practice of compensating realtors on a commission basis, there would be a basis in a barebones legal context for upholding a trustee's receipt of real estate commissions, at least to the extent of the value of the services actually performed. We are here spared the necessity of a barebones determination and a consideration of the value of the services here, however, by reason of the following testimony elicited from Mr. Tullar, appellant's attorney at the time of creation of this decretal trust, concerning his pre-decree conversations with the president of the trustee concerning compensation:

"Q. [by Mr. Conner] And at that time and at the time you discussed this matter with him to determine whether or not the Arizona Trust Company would accept the job as trustee, did you have any conversation with him relative to compensation?"

"A. Yes."

"Q. What was that conversation?"

"A. I told him * * * secondly that there was business property out on Broadway, that had to be sold and I felt Pete Wiley in the Arizona Trust, who was familiar with that property, would be the best possible person to sell it at the best possible price. And then of course the standard real estate commissions in this community would be—would follow as a matter of automatic course."

"Q. Do I understand you that in addition to the ordinary trustee fees that if the Arizona Company was successful in selling any of these properties that the standard real estate commission would be paid to them?"

"A. Oh, the trust fee was just a very low fee. It couldn't possibly have intended to include the real estate commission for sales of real estate."

The president of the trustee testified that he received assurance from Mr. Tullar that " * * * if we were successful in selling the property or having any part of it, that we were to receive the commission, the usual commission." There was testimony to the effect that, although the property was actually sold by another broker, Mr. Wiley, an employee of the trustee, spent considerable time and effort in attempting to bring about the sale. While the property was not formally listed, it appears from the record that the trustee received one-third of the total commission from the selling broker as a matter of standard local custom and practice.

In our view, under all of these circumstances, appellant is estopped to question the propriety of the trustee's receipt of the commission in question. Compare In re Lankershim's Estate, 6 Cal.2d 568, 58 P.2d 1282 (1936). Such a holding accords generally with the principle that a trustee's compensation may be enhanced or diminished by an agreement between the trustee and the beneficiary or beneficiaries. Restatement, Trusts, Second, § 242, Comment *i.* While the oral understanding of appellant's attorney and the trustee regarding commissions preceded the decree establishing the trust, we find nothing in a reasonable construction of the decree which re-

quires that the salary be the trustee's ex-clusive compensation or prohibits the trustee from receiving the commissions as additional compensation. The terms of the decree concerning the trustee's salary are consistent with the testimony to the effect that the salary was for compensation of management, as opposed to selling, services. Yet the basic purpose of the trust was to sell the trust property. The quoted testimony indicates that the prospect of sales commissions was an inducement to the trustee to accept the trust. Absent the understanding testified to, the trustee would have been advised to leave all of the selling job to others, who would have presumably charged the same or similar commissions. The lower court has impliedly found that the trustee's aggregate compensation was just and reasonable, and we see nothing which compels a different conclusion on this record.

As to appellant's emphasis on the trustee's belated disclosure of receipt of the larger of the commissions, there is no question but that appellant is absolutely entitled to a full and accurate final accounting, see Bogert, Trust and Trustees (Second Ed.1962), § 970 at 209, but once such a complete and detailed account has been rendered, as in our view it has in the trustee's supplemental accounting, we are aware of no authority requiring surcharge for the merely tardy reporting of a proper item of compensation.

## FAILURE TO REQUEST REASSESSMENT OF CHICAGO PROPERTY

The parties owned two pieces of commercial property in Chicago. A building on one of the properties which housed a fur salon was substantially destroyed by fire in May, 1967. The building was not sold by the trustee until 1968. The trustee did not ask for a reassessment of the property for the year 1967 following the fire, and property taxes based on the pre-fire value of the building were paid for that year. From these facts, appellant argues that the trustee should be surcharged for her share of the taxes paid for the last six

months of 1967. Appellant appears to assume, without evidentiary support, that a reassessment, if possible, would have resulted in a total absence of tax liability for the arbitrary six month period.

Apart from this assumption, however, other facts place a different light on the issue. The trustee was not qualified to do business in Illinois and could not take title to the property. It consequently proceeded with its trust duties under powers of attorney granted by appellant and her ex-husband. Appellant, however, revoked her power of attorney at about the time she changed attorneys in 1966. She continued to be a titleholder to the property all during 1967. The trustee arranged for a sale of the property during the early months of 1967, but sale was delayed by appellant's objections. Finally, a letter in the record from the appropriate taxing authority indicates that the assessment date for 1967 taxes was January 1, 1967, and that a destructive fire thereafter would have "no bearing on the 1967 assessment and tax" unless the Board of Appeals was persuaded to make some "partial adjustment." We must, on these facts, affirm the decision of the trial court.

## $75 MONTHLY PAYMENTS TO NORMAN LEFTON

The trustee made monthly payments of $75.00 to Norman Lefton, the parties' son and a Chicago resident, for looking after or managing the Chicago property. Seven such payments totalling $525.00 were included in the April, 1966 accounting rendered by the trustee and approved by the court without objection by appellant.

The trustee had no representative of its own in Chicago and its president testified that he engaged Norman Lefton to look after the income-producing property in accordance with the trustee's mandate to in all ways " * * * handle the property as if it were its own." The parties had made similar payments to Norman prior to creation of the trust.

It is appellant's position that the trustee failed to present evidence of serv-

ices or responsibilities undertaken by Norman Lefton sufficient to justify the $75.00 monthly payment. Since there is little detail concerning the duties assumed by Norman in the record, the problem becomes largely one of burden of proof. On that subject, we think the following passage from the Bogert treatise accurately summarizes the law:

"It would seem that the burden of proving the propriety of acts set forth in the account, if they are objected to, should rest on the trustee; but that if he makes out a prima facie case the burden of producing contradictory evidence rests on the beneficiary who has objected."

Bogert, Trusts and Trustees, (Second Ed.1962), § 970, at 203–204, citing, *inter alia,* In re Warren's Estate, 74 Ariz. 319, 248 P.2d 873 (1952), modified on other grounds, 74 Ariz. 385, 249 P.2d 948 (1952); and Mollohan v. Christy, 80 Ariz. 141, 294 P.2d 375 (1956).

But the quantum of evidence required to be presented by the trustee is a reasonable one, see In re Schuster's Estate, 35 Ariz. 457, 479, 281 P. 38, 46 (1929) and to the quoted general rule, we think it might properly be added that where no self-dealing on the part of the trustee is involved, something less in the way of evidence is necessary to make out the trustee's prima facie case when the expenditure in question is a recurring one which has previously been approved without objection in an interim accounting. Such is the case here.

The trustee's president testified that Norman Lefton kept in contact with the businesses on the properties and looked after repairs. He corresponded with the trustee and his availability in Chicago made it unnecessary for an employee of the trustee to consider making costly trips to Chicago. The trustee's powers were broadly written. The trustee made out a prima facie case, and we cannot say that the trial court's decision on the propriety of this expenditure was erroneous.

## $500 PAYMENT TO SAMUEL LEFTON

Following the fire which damaged the Chicago property, the trustee disbursed $500.00 to Samuel Lefton to defray his expenses of a trip to Chicago to effect a settlement with the fire insurance carrier. The trustee did not require expense vouchers, and appellant contends that she should recover from the trustee one-half of the disbursement.

The trustee's president testified that he figured out that had he been required to go, for the same length of time, the expense would have been between seven and eight hundred dollars. He also testified that Samuel Lefton was in a better position than anyone else to effectuate the best possible insurance adjustment for the trust estate. We think the lack of vouchers is excusable under these particular circumstances, and that the trial court's holding on this subject must be affirmed.

## THE CAPA JUDGMENT

There remains for consideration only a judgment rendered in favor of the trustee against Vincent and Joan Capa for back rent due on one of the trust properties. The trustee was of the opinion that the judgment was uncollectible and valueless and did not include it as an asset to be distributed to the parties on termination of the trust judgment.

In their briefs filed in this court, the trustee stated that it had, subsequent to hearing and judgment, tendered assignment of the judgment to appellant, and Samuel Lefton indicated his willingness to have his interest in the judgment so assigned. In her reply brief filed in this court, appellant has indicated that an assignment of the judgment to her will be a satisfactory disposition of her contention concerning the judgment. We see no reason why this portion of the appeal should not be disposed of in the manner advanced and accepted by the parties.

The decision of the trial court is reversed only with respect to the Capa judg-

ment, and the cause is remanded for the sole purpose of disposing of such judgment, with instructions that the entire interest in the judgment be assigned to appellant. In all other respects, the judgment of the trial court is affirmed.

HATHAWAY, J., and BEN C. BIRDSALL, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge BEN C. BIRDSALL was called to sit in his stead and participate in the determination of this decision.