733 P.2d 1102

**SHRINERS HOSPITALS FOR CRIPPLED CHILDREN,**
Petitioner-Appellant,

v.

**Mary Jane GARDINER, Trustee; The Laurabel Gardiner Trust,**
Respondents-Appellees.

No. 1 CA–CIV 7536.

Court of Appeals of Arizona,
Division 1, Department B.

May 15, 1986.

Gust, Rosenfeld, Divelbess & Henderson by Richard H. Whitney and Fred Cole, Phoenix, for petitioner-appellant.

Romley & Romley by Elias M. Romley, Phoenix, for respondents-appellees.

MEYERSON, Judge.

May a trustee completely delegate her power to manage and invest trust assets? This is the important question presented in this appeal. As explained herein, we hold that trustee Mary Jane Gardiner breached her fiduciary obligations by delegating investment power to a third party.

## I. FACTS

Appellant Shriners Hospitals For Crippled Children (Hospital) appeals from the trial court's order denying a surcharge of

appellee Mary Jane Gardiner, and approving appointment of Robert Gardiner as new trustee of the Laurabel Gardiner Trust (Trust). This appeal has its genesis in the Trust established by Laurabel Gardiner in her will. The Trust names four income beneficiaries: Mary Jane Gardiner, Charles Gardiner, Robert Gardiner, and Jean Gardiner. The Hospital is named as the remainder beneficiary. The Trust also designates Mary Jane Gardiner as the trustee, Charles as first-successor trustee, and Robert as second-successor trustee.

After Laurabel Gardiner's death in 1960, Mary Jane (Trustee) began acting as Trustee for the Trust. She remained in this capacity until 1983 when she was declared legally incapacitated. Beginning in 1968 when a partial distribution of the estate was made, the Trustee turned over to Charles Gardiner the complete control and management of certain Trust assets. It appears that the Trustee delegated her investment power to Charles because of his business and investment experience. The record discloses that the Trustee did not have the experience or skill necessary to make the investments herself.

At some point, the Trustee became aware that Charles had diverted $317,234.36 in trust funds. The record does not contain the date of her discovery. She included a report of the misappropriation in her Second Account and Report of Trustee filed with the probate court in December, 1982. In this report, she admitted that she did not learn of the misappropriations until "long after they occurred." One month after filing the Report, the Trustee initiated an action in California (where Charles had relocated) to seek the return of the misappropriated funds. The status of this action is not known.

After learning of the misappropriations the Hospital filed a petition to surcharge the Trustee for the amount of the misappropriated funds. The Hospital also asked for the removal of Mary Jane as trustee and appointment of a new trustee. The trial court refused to surcharge the Trustee. The court found that she was without

any knowledge or fault concerning the misappropriation. The court did agree to remove her as trustee. In her place, the trial court appointed second-successor trustee, Robert Gardiner. Because Robert Gardiner is now Mary Jane's guardian, the Hospital objects to his selection as trustee.

On appeal, the Hospital presents three issues: (1) whether the Trustee breached her trust duties; (2) whether the Trustee negligently supervised the investment activities of Charles; and (3) whether Robert Gardiner has a conflict of interest requiring appointment of a different trustee. Because we agree that the Trustee breached her trust duties, we need not consider the issue of negligent supervision.

## II. BREACH OF TRUST

Under Arizona's probate code, a trustee may be "personally liable for obligations arising from ownership or control of property of the trust estate." A.R.S. § 14-7306(B). The probate court is vested with exclusive jurisdiction to hear matters arising from the administration of a trust. A.R.S. § 14-7201(A)(3). Pursuant to A.R.S. § 14-7204, the Hospital filed a petition with the probate court seeking to surcharge the Trustee for the sums diverted by Charles.

■ A trust beneficiary may pursue a surcharge of the trustee where the trustee commits a breach of trust. *Restatement (Second) of Trusts* § 205 (1959) (*Restatement*). The trustee commits a breach of trust if she violates any duty which she owes to the beneficiary. *Restatement* § 201. The trustee may also be liable to the beneficiary for acts of her agents if she: (1) delegates to the agent the performance of acts which she was under a duty not to delegate; or (2) does not exercise proper supervision over the conduct of the agent. *Restatement* § 225(2)(b), (d).

■ The Hospital contends that Mary Jane breached at least one duty while acting as trustee. We agree. The ability of a trustee to delegate her power is limited. In general, a trustee may delegate to

agents or attorneys ministerial duties connected with the trust. *In re Hartzell's Will*, 43 Ill.App.2d 118, 192 N.E.2d 697 (1963). Certain duties, however, may never be delegated. In particular, "a trustee cannot properly delegate to another power to select investments." *Restatement* § 171 comment h.

Courts have applied this principle in a myriad of factual situations. For example, in *Newhoff v. Rankow, Cohen & Isaac*, 107 Misc.2d 589, 435 N.Y.S.2d 632 (Sur.Ct. 1980), the court sustained objections to investments made by a co-trustee. The co-trustee defended by contending that his fellow trustee determined the investments and made them without consultation. The court found that each of the co-trustees was "charged with the responsibility of protecting the funds." *Id.* at 597, 435 N.Y. S.2d at 638. The court found that the co-trustee had opportunities to question his co-fiduciary with regard to the investments, and if not satisfied, force him to prepare a proper accounting. *Id.* The court explained that the co-trustee failed to participate generally in the investment process and that he failed to review the purchases and make independent inquiries regarding them. The court surcharged the co-trustee for the loss.

In *Wells Fargo Bank & Union Trust Co. v. Talbot*, 141 Cal.App.2d 309, 296 P.2d 848 (1956), the trustee sold investments at the suggestion and desire of one of the trust beneficiaries. The court found that the trustee failed to exercise any independent judgment or discretion in the transaction. Accordingly, the court determined that the trustee breached his duty because "the trustee, even when given broad discretionary power of investment, must exercise its independent discretion and judgment in reference to the investment of trust funds." *Id.* at 317, 296 P.2d at 853. *See also Washington Loan & Trust Co. v. Colby*, 108 F.2d 743, 747 (D.C.Cir.1939).

■ The Trustee argues that we should adopt a far more liberal doctrine. We find the cases on which she relies to be unpersuasive. For example, in *Anderson v. Roberts*, 147 Mo. 486, 48 S.W. 847 (1898) the court relieved the trustee-judges of liability for losses sustained by the trust primarily on the ground that they were named trustees due to the offices they held. Further, unlike the situation in *Local Union v. First Nat'l Bank*, 93 Ill.App.3d 890, 49 Ill.Dec. 250, 417 N.E.2d 1077 (1981), there is no evidence in this case that the trustee "continued to exercise discretion and judgment in watching the investment fund." *Id.* at 893, 49 Ill.Dec. at 253, 417 N.E.2d at 1080. In addition, *In re Walsh's Estate*, 143 Misc. 223, 256 N.Y.S. 870 (Sur.Ct.1932) and *In re Mann's Estate*, 147 Misc. 873, 266 N.Y.S. 110 (Sur.Ct.1933), relied upon by the Trustee, in our opinion, are contrary to the weight of authority as reflected in the *Restatement.*[1]

■ Having decided that the Trustee may not delegate her investment power, we turn to the evidence which is relevant to the breach of trust claim. The Hospital relies on *Lefkowitz v. Arizona Trust Co.*, 10 Ariz.App. 415, 459 P.2d 332 (1969) for the proposition that the Trustee has the burden of proving she did not commit a breach of trust. The *Lefkowitz* court did impose upon the trustee the burden of proving the propriety of acts set out in an accounting. *Id.* at 420, 459 P.2d at 337. The present case, however, concerns a petition for surcharge, rather than an accounting. In general, it is one seeking to surcharge the trustee who has the burden of

---

1. Subsequent to the events at issue in this case, the Arizona Legislature adopted the Uniform Trustees' Powers Act (Act). A.R.S. §§ 14–7231– 37 (Supp.1985). The Act was made applicable to trusts established after April 18, 1984. Laws 1984, ch. 180, § 12. Accordingly, the Act does not apply to this case.

We note that the Act appears to give a trustee broader power to delegate trust duties than would be permitted under the *Restatement.* A.R.S. § 14–7233(C)(24). *See generally,* Haskell, *Some Problems with the Uniform Trustees' Powers Act,* 32 Law & Contemp. Probs. 168 (1967); Horowitz, *Uniform Trustees' Powers Act,* 41 U.Wash.L.Rev. 1 (1966). We express no opinion on whether the Trustee's conduct would have been permissible under the Act.

proving that the trustee breached the applicable fiduciary duty. *Lopez v. Lopez*, 250 Md. 491, 501, 243 A.2d 588, 594 (Ct.App. 1968); *Estate of Stetson*, 463 Pa. 64, 84, 345 A.2d 679, 690 (1975); *see also Seven G Ranching Co. v. Stewart Title & Trust*, 128 Ariz. 590, 627 P.2d 1088 (App.1981).

■ It is uncontroverted that the Trustee delegated the complete management of particular Trust assets to Charles. In Section 8 of the Second Report the Trustee states:

> All of said investments were made on behalf of the Trust Estate by a person qualified in that business, who was selected by and in whom the Trustee justifiably had the utmost trust and confidence.

More specifically, the parties stipulated[2] that the Trust assets "were placed in his [Charles] hands for investment." It was further stipulated that the "selection" of investments and investment of funds were made by Charles. We conclude that the foregoing admission and undisputed facts stipulated to by the parties met the Hospital's burden of proof. The dissent urges that the evidence fails to substantiate the Trustee's delegation of her investment authority. Admittedly, the record in this case is thin. It is significant to note, however, that the Trustee in her brief on appeal admits that she delegated her investment power to Charles Gardiner, but argues that she was justified in doing so. For example, the Trustee argues that she "did not commit a breach of trust in delegating investment responsibility to Charles." There is no dispute between the parties that the Trustee delegated the investment function to Charles.

■ Once the party petitioning for surcharge establishes a *prima facie* breach of trust, the burden of persuasion shifts to the trustee to either produce rebuttal evidence or to present a good defense. *See Lopez v. Lopez*, 250 Md. at 501, 243 A.2d at 594; *Seven G Ranching Co. v. Stewart Title & Trust*, 128 Ariz. at 592, 627 P.2d at

1090. The Trustee failed to offer any evidence indicating that she did not delegate her power of investment. As noted above, on appeal the Trustee admits that she delegated her investment responsibility to Charles. Consequently, her only hope of meeting her burden is to come forward with a valid defense.

■ The Trustee does present several defenses. First, she claims that even if she breached her fiduciary duty, her breach was not the proximate cause of the loss. Generally, a court will not surcharge a trustee if there is no causal connection between the breach of duty and the loss. *Estate of Stetson*, 463 Pa. at 84, 345 A.2d at 690. However, the burden is on the trustee to show that "the loss would have occurred anyway." *Seven G Ranching Co. v. Stewart Title & Trust*, 128 Ariz. at 592, 627 P.2d at 1090. The Trustee offers no evidence to meet this burden. In particular, she offers no evidence indicating how the loss would have occurred without her breach of trust.

■ The Trustee also contends that the Trust instrument allowed her to delegate her power to make investments. The terms of a trust may permit the trustee to delegate powers which she could not normally delegate. *Restatement* § 171 comment j. The Trustee focuses on portions of the Trust which give her the power to appoint agents:

> My Executor and Trustee ... shall have all such rights, powers and directions ... to employ and compensate attorneys, accountants, agents and brokers....

The Trust also gave the Trustee "all ... rights [and] powers ... necessary or appropriate for effective administration" of the estate. In our opinion, such powers fall short of authorizing the Trustee to completely delegate the power to make and select investments to Charles Gardiner.

■ Nor can this court imply a right to delegate investment power from the trust terms. In *Powers v. Ashton*, 45 Cal.

---

**2.** At the hearing on the petition to surcharge, counsel for the Trustee made an avowal of this

evidence to the trial court. Counsel for the Hospital "accepted" the avowal.

App.3d 783, 119 Cal.Rptr. 729 (1975), for example, the trust also contained clauses giving the trustees the power to employ individuals " 'as may be deemed by [trustees] to be necessary.' " *Id.* at 796, 119 Cal.Rptr. at 732. The trustees argued that this clause, in conjunction with a clause giving the trustees certain other powers, allowed them to delegate the enumerated powers. The court held:

> The power to appoint administrative employees must be read for what it is *and not as a general power of the trustees to delegate their policy* as opposed to strictly administrative functions.

*Id.* at 789, 119 Cal.Rptr. at 733–34 (emphasis added). Likewise, the Trust provision authorizing Mary Jane to employ agents cannot be read as a blanket authority granting her the power to give up her trusteeship.

▉ The Trustee's final defense is that this court should equitably excuse any breach of trust. The *Restatement* states in pertinent part:

> In the absence of a statute it would seem that a court of equity may have power to excuse the trustee in whole or in part for liability where he has acted honestly and reasonably and ought fairly to be excused.

*Restatement* § 205 comment g. A few courts have recognized the existence of this equitable power to excuse a breach of trust. *In re Guthrie's Estate*, 320 Pa. 530, 538, 182 A. 248, 252 (1936); *cf. Morrissey v. Curran*, 650 F.2d 1267, 1275 n. 7 (2d Cir. 1981). We need not determine whether this doctrine is applicable in Arizona. The undisputed facts show that the Trustee lacked the ability to manage Trust assets herself and therefore turned that responsibility over to Charles because of his apparent skill and expertise. To hold that such circumstances could constitute an equitable defense would render the nondelegation doctrine meaningless.

▉ Our opinion should not be read as questioning the Trustee's honesty in this matter. Nevertheless, she has failed completely to meet her burden of producing any evidence of the propriety of her actions. She has defended this action solely based upon her faith in Charles. Gardiner's business experience. But as the cases indicate, a trustee, acting as a fiduciary, is held to a higher standard. The position of trust which she assumed called for her to do more than sit idly by and hope that the substantial assets of the estate were managed properly. A trustee is obligated to exercise independent judgment and managerial authority to insure that the trust properties are not only invested wisely but also that they are not misappropriated. Thus, it is completely unacceptable for a trustee to point with confidence to the business acumen of some third person and fervently hope that the trust estate is being handled with care. It is also no excuse to point to the fact that Charles Gardiner is named as a successor trustee under the trust. Charles Gardiner's status as successor trustee in no way excuses the failure of Mary Jane Gardiner to fulfill her obligatory fiduciary responsibilities.

Accordingly, we conclude that the Trustee has breached her fiduciary duty. We further conclude that she failed to meet her burden of proof on any defense. Therefore, the case is remanded with instructions to surcharge the Trustee for the full amount of the loss.

## III. APPOINTMENT OF SUCCESSOR TRUSTEE

▉ Finally, the Hospital asks that the newly-appointed trustee, Robert Gardiner be replaced. A successor trustee may be liable to a beneficiary for breach of trust if he neglects to take proper steps to redress a breach of trust committed by the predecessor. *Restatement* § 223. Because we have held that the trial court erred in failing to surcharge the Trustee in connection with Charles Gardiner's defalcation, we agree that second-successor trustee Robert Gardiner cannot properly continue to act as successor trustee and as guardian and conservator for the predecessor trustee Mary Jane Gardiner. *See In re*

*Silber,* 104 Misc.2d 574, 428 N.Y.S.2d 614 (1980).

Reversed and remanded.

CONTRERAS, P.J., concurs.

FROEB, Chief Judge, dissenting:

This case has more to do with burden of proof than it does with the law of trusts. When the time came for a hearing on the Hospital's petition for surcharge, both parties arrived but *no one presented any evidence.* In my opinion, the petitioner had the burden of presenting a *prima facie* case to support the claim of breach of fiduciary duty. Until evidence sufficient to withstand a motion to dismiss was presented, the trustee had no obligation to present evidence in defense of the claim.

The majority opinion depends upon hyperbole to describe what the trustee did or did not do. For example, there is nothing to indicate the trustee "gave up her trusteeship" or "delegated" the "complete management" of trust assets to Charles. The only "evidence" is that investments were "made on behalf of the trust estate" by Charles. That is a far cry from a delegation of power or surrender of control, but most important, it certainly fails as a *prima facie* case of breach of trust.

Since the *only* "evidence" was paragraph 8 of the trustee's second account and report, the relevant portions are set forth below:

8. From time to time *the Trustee made investments* ... in the money market and also in the purchase and sale of shares of stock listed on the New York Stock Exchange, the American Stock Exchange and the Over-the-Counter Markets.... *All of said investments were made on behalf of the Trust Estate by a person qualified in that business, who was selected by and in whom the Trustee justifiably had the utmost trust and confidence.* Without the knowledge or consent of the Trustee, said person received from said investments, and diverted to his own use, a total believed by the Trustee to aggregate $317,234.36 ($116,-696.55 on January 16, 1981 and $200,-537.81 on March 4, 1981). The trustee did not learn of said diversions until long after they occurred. No part of the amount so diverted had been returned or paid to the Trustee or the Trust Estate....

(Emphasis added.) It is from these allegations and recitals, absent any evidence, that the majority finds a *prima facie* case for breach of fiduciary duty occurred. I am unable to agree that the provisions of paragraph 8 come even close to a *prima facie* case for surcharge of the trustee in the amount of $317,234.36.

Instead of presenting evidence at the hearing, counsel stated that trust assets were placed in Charles' hands and that he selected the investments, which consisted of stock on the New York and American stock exchanges and over-the-counter markets. There is nothing about this which would require on appellate court to conclude, in the face of a contrary trial court ruling, that a breach of trust had occurred. Under trust powers clearly allowing it, the trustee employed her nephew, Charles Gardiner, an investment counselor and stockbroker with Dean Witter Reynolds, to invest the assets of the trust in securities, presumably to hold them in a street account in the name of trustee in order to facilitate purchase and sale. It is not inappropriate to point out that this is precisely what individual trustees frequently do in carrying out the investment duties given them by the trust instrument, particularly in instances where they do not possess the expertise to select trust investments for themselves.

One thing should be clear at this point. The issue before the court is not whether the trustee met her burden to *account* for funds belonging to the trust. The trustee did meet this burden. The issue is whether the trustee improperly allowed Charles Gardiner, a stockbroker, to have such access to the investment account at the brokerage house that he could divert the funds to his own use. Since the success of that claim depends upon the showing of a

breach of trust, the party making the contention must prove a *prima facie* case. In this, the petitioner has failed, because the mere statements made in paragraph 8 together with the stipulation of the parties, do not support it.

Generally, a trustee is presumed to have acted in good faith and to have performed his duties under the trust. Under this presumption, the burden of proving a breach of trust rests on the person asserting the breach. *Goldman v. Rubin*, 292 Md. 693, 441 A.2d 713 (1982); *Parker v. Pine*, 617 S.W.2d 536 (Mo.App.1981); *Gregory v. Moose*, 266 Ark. 926, 590 S.W.2d 665 (1979); *Elmhurst National Bank v. Glos*, 99 Ill. App.2d 74, 241 N.E.2d 121 (1968).

In *Lopez v. Lopez*, 250 Md. 491, 243 A.2d 588 (1968), the court stated:

> [T]he person who challenges the conduct of a trustee, must first allege that the trustee has a duty and has been derelict in the performance of this duty, and offer evidence in support of this allegation. Then, and not until then, does the trustee have the burden of rebutting the allegation. In the absence of such proof, there is no duty on the trustee to prove a negative: i.e., that he has not been derelict in the performance of his duties.

*Id.*, 243 A.2d at 594. In *Lopez* the court relied on Bogert, *Trusts and Trustees*, (2d Ed.1962) § 871, which states:

> A beneficiary seeking to obtain relief for a breach of trust must plead and prove facts which show the existence of a fiduciary duty and the failure of the trustee to perform it, and that consequently the court should grant the requested remedy. If he seeks damages, a part of his burden will be proof that the breach caused him a loss. Evidence which merely shows a decrease in the value of the trust property, without showing that the trustee wrongfully caused the shrinkage, does not make a case. If the beneficiary shows a prima facie case, the burden of contradicting it or showing a defense will shift to the trustee.

Thus, before the duty to go forward with evidence will shift to the trustee, the beneficiary must plead and prove a *prima facie* case consisting of (1) duty, (2) breach of that duty, and (3) damages proximately caused by such breach.

Before evaluating the words of paragraph 8, several factors must be kept in mind. First, the trustee powers specified in the will authorized the trustee to hire an investment advisor and a stockbroker. That is what the trustee did here. There is no dispute that Charles Gardiner was qualified since that was his work at Dean Witter Reynolds. Moreover, there is no question that the trustee was justified in placing her confidence in him because the will itself named him as a successor trustee.

This brings us directly to the words of paragraph 8. The trustee states that investments were made on behalf of the trust estate by a person qualified in that business (Charles Gardiner). So far there is nothing to suggest a breach of trust. Next, the trustee states that without her knowledge or consent, Charles Gardiner diverted funds from the investments to his own use. Once again, there is nothing to suggest (let alone prove) a breach of trust. This is followed by a statement that the trustee did not learn about the diversions until long after they occurred. It is pure speculation as to *why* the trustee did not learn about it. It cannot be said that this statement is an expression of fault by the trustee which justifies a surcharge. In my opinion, the petitioner seeking the surcharge must make a *prima facie* case of fault. Were we to speculate, we might find good reason for the trustee not to have knowledge of the diversions of funds. Let the claimant prove a *prima facie* case. Finally, paragraph 8 goes on to say that no part of the diverted funds has been returned or paid to the trustee or the trust estate. There is no breach of trust in this, since, *for all that the proof shows*, the trustee has made reasonable efforts to recover the funds. Once again, there is no evidence one way or the other.

The majority has referred to the action of the trustee as an improper "delegation" of the "complete management" of trust assets. There is no evidence of this and I disagree with the characterization. There is no proof the trustee did not retain control and management of the trust assets. If the trustee authorized Charles Gardiner to make investments on behalf of the trust, there is no evidence to suggest the investment choices were not approved by the trustee.

In conclusion, this is not a case seeking to have a trustee reconcile receipts and expenditures set forth in an account. It is a case where petitioner has asserted fault against the trustee, yet took not one step to prove it. It is a curious case indeed where the party making the assertion comes to trial but fails to offer any evidence. In my opinion, the trial court correctly rejected the claim and I would affirm the order.