733 P.2d 1110

**SHRINERS HOSPITALS FOR CRIPPLED CHILDREN,**
Petitioner-Appellant,

v.

**Mary Jane GARDINER, Trustee; the Laurabel Gardiner Trust,**
Respondents-Appellees.

No. CV–86–0380–PR.

Supreme Court of Arizona,
En Banc.

Feb. 3, 1987.

Gust, Rosenfeld, Divelbess & Henderson by Richard H. Whitney and Fred Cole, Phoenix, for petitioner-appellant.

Romley & Romley by Elias M. Romley, Phoenix, for respondents-appellees.

HAYS, Justice (Retired).

Laurabel Gardiner established a trust to provide income to her daughter, Mary Jane Gardiner; her two grandchildren, Charles Gardiner and Robert Gardiner; and a now-deceased daughter-in-law, Jean Gardiner. The remainder of the estate passes to Shriners Hospitals for Crippled Children (Shriners) upon the death of the life income beneficiaries. *In re Estate of Gardiner,* 5 Ariz.App. 239, 240, 425 P.2d 427, 428 (1967). Laurabel appointed Mary Jane as trustee, Charles as first alternate trustee, and Robert as second alternate trustee. Mary Jane was not an experienced investor, and she placed the trust assets with Dean Witter Reynolds, a brokerage house. Charles, an investment counselor and stockbroker, made all investment decisions concerning the trust assets. At some point in time, Charles embezzled $317,234.36 from the trust. Shriners brought a petition to surcharge Mary Jane for the full $317,-234.36. The trial court denied the petition, but a divided court of appeals reversed. *Shriners Hospitals for Crippled Children v. Gardiner,* 152 Ariz. 519, 733 P.2d 1102, (Ct.App.1986).

We granted review on three issues:

1) Whether Mary Jane's delegation of investment power to Charles was a breach of Mary Jane's fiduciary duty.

2) Whether Mary Jane's delegation to Charles of investment power was the proximate cause of the loss of $317,234.36.

3) Whether Robert can properly continue to act as successor trustee and as guardian and conservator for the predecessor trustee Mary Jane.

We have jurisdiction pursuant to A.R.S. § 12–120.24; Rule 23, Rules of Civ.App. Proc.; Ariz. Const. art. 6, § 5(3).

## 1. BREACH OF FIDUCIARY DUTY

█ In Arizona, a trustee has the duty to "observe the standard in dealing with the trust assets that would be observed by a prudent man dealing with the property of another." A.R.S. § 14–7302. If the trustee breaches that responsibility, he is personally liable for any resulting loss to the trust assets. Restatement (Second) of Trusts §§ 201, 205(a). A trustee breaches the prudent man standard when he delegates responsibilities that he reasonably can be expected personally to perform. Restatement (Second) of Trusts § 171.

█ We believe that Mary Jane breached the prudent man standard when she transferred investment power to Charles. Mary Jane argues, and we agree, that a trustee lacking investment experience must seek out expert advice. Although a trustee must seek out expert advice, "he is not ordinarily justified in relying on such advice, but must exercise his own judgment." Restatement (Second) of Trusts § 227. *In re Will of Newhoff,* 107 Misc.2d 589, 595,

435 N.Y.S.2d 632, 637 (1980) (a trustee must not only obtain information concerning investment possibilities but also is "under a duty to use a reasonable degree of skill in selecting an investment"). Mary Jane, though, did not evaluate Charles' advice and then make her own decisions. Charles managed the trust fund, not Mary Jane. A prudent investor would certainly participate, to some degree, in investment decisions.

The dissent in the court of appeals stated that "there is nothing to indicate the trustee 'gave up her trusteeship' or 'delegated' the 'complete management' of trust assets to Charles." *Shriners Hospitals for Crippled Children*, 152 Ariz. at 525, 733 P.2d at 1108, (Froeb, C.J., dissenting). While we agree that the record on appeal is meager, Mary Jane unquestionably transferred trustee discretion to Charles.

Mary Jane's second accounting of the Gardiner trust states:

From time to time the Trustee made investments ("investments") in the money market and also in the purchase and sale of shares of stock listed on the New York Stock Exchange, the American Stock Exchange and the Over-the-Counter Markets.... *All of said investments were made on behalf of the Trust Estate by a person qualified in that business*, [Charles] *who was selected by and in whom the Trustee justifiably had the utmost trust and confidence.*

(emphasis added)

Most damning, however, are the admissions of Mary Jane's own attorney.

Now, we can show, if the Court pleases, by way of evidence if counsel will not accept my avowal, we can show that Charles Gardiner for the past many years, including several years prior to and since these assets were placed in his hands for investment, was in the business of a consultant and in the business of investing and selecting investments in the stock market, and this he did. And it was only natural that Mary Jane would turn to him to make that selection, to invest those funds and to account in an appropriate proceeding if, as and when required. So the prudent man rule has been adhered to here. She got a man who is capable and fortunately he was a man who was designated as an alternate trustee *and for all practical purposes really served as trustee.*

(emphasis added)

Together, the accounting and admissions establish that Charles was functioning as a surrogate trustee. Mary Jane was not exercising any control over the selection of investments. She clearly breached her duties to act prudently and to personally perform her duties as a trustee. *In re Kohler's Estate*, 348 Pa. 55, 33 A.2d 920 (1943) (fiduciary may not delegate to another the performance of a duty involving discretion and judgment).

Even on appeal, Mary Jane does not argue that she, in fact, exercised any discretionary investment power. Instead, she argues that her lack of investment experience made it prudent for her to delegate her investment power. She relies on the Restatement (Second) of Torts § 171.

### § 171. Duty Not To Delegate

The trustee is under a duty to the beneficiary not to delegate to others the doing of acts which the trustee can reasonably be required personally to perform.

■ Mary Jane asserts that her lack of investment experience prevented her from personally exercising investment power and consequently permitted delegation of that power. The standard of care required, however, is measured objectively. *In re Mild's Estate*, 25 N.J. 467, 480–81, 136 A.2d 875, 882 (1957) (the standard of care required of a trustee does not take into account the "differing degrees of education or intellect possessed by a fiduciary"). The trustee must be *reasonable* in her delegation. A delegation of investment authority is unreasonable and therefore Mary Jane's delegation is a breach of trust. *See Estate of Baldwin*, 442 A.2d 529 (Me.1982) (bank trustee liable for losses incurred when it failed to monitor management of grocery store despite bank's lack of expertise in grocery store management).

It is of no import that Charles was named as alternate trustee. A trustee is not permitted to delegate his responsibilities to a co-trustee. Restatement (Second) of Trusts § 224(2)(b); *see also id.*, comment a (improper for co-trustee A to direct co-trustee B to invest trust funds without consulting A). Certainly, then, a trustee is subject to liability when she improperly delegates her investment responsibility to an alternate trustee. *Bumbaugh v. Burns*, 635 S.W.2d 518, 521 (Tenn.App. 1982) (impermissible for trustee to delegate discretion as to investment of funds to co-trustee).

Mary Jane also argues that broad language in the trust document permitted her to delegate her investment authority to Charles. A trust document may allow a trustee to delegate powers ordinarily nondelegable. The Gardiner Trust permits the trustee "to employ and compensate attorneys, accountants, agents and brokers." This language does not bear on Mary Jane's delegation of investment authority. Mary Jane did not simply employ Charles; *she allowed him to serve as surrogate trustee*. We view this language as merely an express recognition of the trustee's obligation to obtain expert advice, not as a license to remove herself from her role as a trustee.

## 2. PROXIMATE CAUSE

Mary Jane next argues that there is no causal connection between her breach and the loss suffered by the trust. The court of appeals rejected this argument in a summary fashion, stating that "the trustee offers no evidence to meet this burden of showing that the loss would have occurred anyway." *Shriners Hospitals for Crippled Children*, 152 Ariz. at 523, 733 P.2d at 1106. We disagree.

The very nature of the loss indicates that the breach was not causally connected to the loss. The accounting indicates that Charles embezzled the funds.

> Without the knowledge or consent of the Trustee, said person received from said investments, and diverted to his own use, a total believed by the Trustee to aggregate $317,234.36 ($116,695.55 on January 16, 1981 and $200,537.81 on March 4, 1981). The trustee did not learn of said diversions until long after they occurred. No part of the amount so diverted had been returned or paid to the Trustee or the Trust Estate....

If the trust had suffered because poor investments were made, the delegation of investment authority would unquestionably be the cause of the loss. Otherwise, a causal connection between Charles' diversion of funds and Mary Jane's breach is absent unless the delegation of investment authority gave Charles control and dominion over the trust fund that permitted the defalcation.

A causal connection does not exist simply because "but for" Mary Jane's opening of the account at Dean Witter Reynolds, no loss would have occurred. A trustee is not personally liable for losses not resulting from a breach of trust. Restatement (Second) of Trusts § 204; *Citizens & Southern Nat'l Bank v. Haskins*, 254 Ga. 131, 134, 327 S.E.2d 192, 197 (1985). Mary Jane did not breach her duty by establishing an account at Dean Witter Reynolds, a major brokerage house. Charles was not only the type of person Mary Jane was obliged to seek out for investment advice, but he was a person whom Laurabel Gardiner indicated was trustworthy by naming him as second alternate trustee. Furthermore, the Dean Witter Reynolds account was apparently in Mary Jane's name. If Dean Witter Reynolds wrongfully allowed Charles access to the fund, Mary Jane is not personally liable. Restatement (Second) of Trusts § 225 (trustee not generally liable for wrongful acts of agents employed in administration of estate).

Unfortunately, the record does not reveal the nature of the diversion. The relative culpability of Charles, Mary Jane and Dean Witter Reynolds is unclear. The trial court found that Mary Jane was without fault and, therefore, did not consider the causal connection between Mary Jane's breach and Charles's defalcation. The inadequacy

of the record demands a remand for a determination of the relationship between Mary Jane's delegation of investment authority and Charles' diversion of funds.

### 3. ROBERT GARDINER AS TRUSTEE

■ If, after remand, the trial court determines that Mary Jane is personally liable for the diversion of funds, Robert must be removed as trustee.[1] A trustee is liable to a beneficiary if he fails to "redress a breach of trust committed by the predecessor [trustee]." Restatement (Second) of Trusts § 223(2). Robert would, therefore, have a duty to enforce the surcharge against his aunt and ward, Mary Jane. The conflict between personal responsibilities and trust obligations is obvious and great. *Estate of Rothko*, 43 N.Y.2d 305, 319, 401 N.Y.S.2d 449, 454, 372 N.E.2d 291, 296 (1977) (while a trustee is administering the trust he must refrain from placing himself in position where his personal interest does or may conflict with interest of beneficiaries). Another trustee, without such conflicts, would have to be appointed.

The decision of the court of appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

GORDON, C.J., and FELDMAN, V.C.J., and HOLOHAN, J., concur.

*Note:* JAMES DUKE CAMERON, Justice, recused himself from participation in the determination of the foregoing case.

---

1. Robert Gardiner is currently serving as trustee because Mary Jane is an invalid and Charles is untrustworthy. Robert is also Mary Jane's guardian-conservator.