*In re* ESTATE OF RENA A. GAMMIE, Deceased (Donald G. Gammie, Ex'r of the Estate of Rena A. Gammie, Appellant; James L. Gammie, Appellee).

First District (2nd Division)   No. 85—2039

Opinion filed October 7, 1986.

Ralph O. Butz and Robert Keith Larson, both of Riordan, Larson, Bruckert & Moore, of Chicago, for appellant.

Barry C. Kessler, of Concannon, Dillon & Morton, of Chicago, for appellee.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Donald G. Gammie, executor of the estate of Rena A. Gammie, appeals from an order of the trial court surcharging him for the alleged diminution of an asset of the estate.

Rena A. Gammie died testate on April 19, 1983. After making certain specific bequests, her will provided that the residue of the estate "shall be sold and converted to cash" and be distributed one-third to her son, Donald G. Gammie (the executor), one-third to the children of her deceased daughter, Jane, and one-third to her son,

James L. Gammie (the objector.)

The objector, James, alleged that his brother Donald, the executor, caused an asset of the estate identified as Belden & Blake (Belden) to diminish in value and therefore should be surcharged. The trial court agreed and stated: "If Mr. Gammie, the Executor, had sold the stock to his brother according to the formula or transferred it to him, we wouldn't have that problem here today."

Between 1965 and 1969, the decedent's late husband and father of the disputants purchased an interest in certain producing–oil-well partnerships sponsored by Belden of North Canton, Ohio. On his death, these partnership interests passed on to his widow, the decedent herein. These investments were made at the suggestion of, and through, Blunt, Ellis & Loewi (Blunt) of Milwaukee, Wisconsin. The decedent and her late husband used this firm for their investments.

The decedent and her husband were pleased with the performance of Belden. In addition to tax benefits, they received cash dividends well in excess of their initial investment.

On June 8, 1983, Donald G. Gammie was duly appointed the executor. On July 10, 1983, all of the securities comprising the residuary estate, except Belden, were sold through Blunt, the decedent's investment advisor. The Belden interest was not sold because there was no market. However, Belden offered to purchase the partnership interest for $12,000 as an accommodation to the estate, although they preferred not to do so. At the same time, the objector, James L. Gammie, offered to purchase Belden for $11,343.21. This was less than Belden's offer.

The decedent's will provided that her collector plates, silver, gold pins and a picture be sold to the heir who bid the most. This was done. On October 9, 1983, the executor's attorney, Ralph O. Butz, suggested that the same bidding procedure be followed in disposing of Belden. This was rejected by the objector, who wrote to the executor on October 9, 1983, and said:

"I do not accept Butz' notion of a blind bid for the properties. *** I urge you to accept my plan of May 14, 1983.—$11,343.21—As far as I am concerned that is the best and only offer you will see."

On April 26, 1984, the Belden interest was converted from a partnership interest to 1,111 units of Belden & Blake Energy Company. In May of 1984 the executor contacted Blunt regarding a market for Belden and possible disposition. The firm responded that it did not know the value but would "look into it." On further inquiry, the executor did not receive "any substantive response" from the firm, but

was told that the firm would "turn it over" to their attorney and that the executor "couldn't sell [the units] outright" because the asset was "something different than stock shares." The record does not explain the reason that the units could not be sold outright, but apparently the difficulty arose because the estate was holding units which had not yet been converted to registered securities which were about to be traded on the American Stock Exchange.

Through the summer of 1984, the executor contacted Blunt approximately 16 times, but was not able to determine either the value or the method of disposing the Belden interest. On September 25, 1984, the executor filed a final account proposing a distribution of Belden in kind. James L. Gammie objected.

On October 30, 1984, Donald and James met in an effort to resolve the matter. The evidence is conflicting regarding the meeting. Donald testified that now James wanted distribution in kind of the Belden interest. James disagreed. He testified that he wanted Blunt to sell the interest. Donald then directed Blunt to sell and was advised by them that the units could not be sold on the open market immediately because it would take three or four weeks to process the transaction.

Before Blunt could complete the transaction, Donald filed another accounting proposing distribution in kind. James objected again and sought a surcharge against Donald. He alleged that the value of the Belden interest dropped from $22 per share on October 30, 1984, to $14 per share on November 27, 1984.

A hearing was held on February 6 and 7, 1985. The only witnesses were James, the objector, and Donald, the executor. On February 11, 1985, the court entered its order surcharging the executor. Rehearing was denied on June 17, 1985. This timely appeal followed.

An executor administering an estate is required to exercise the degree of diligence which an ordinarily prudent person would use in management of his own affairs. (*In re Estate of Lindberg* (1981), 98 Ill. App. 3d 212, 215, 424 N.E.2d 1161.) The general rule is that the executor is presumed to have acted in good faith and the burden of proving his breach of trust rests upon the party asserting it. *Elmhurst National Bank v. Glos* (1968), 99 Ill. App. 2d 74, 79, 241 N.E.2d 121.

In the case at bar, Donald G. Gammie was appointed as the executor on June 8, 1983. In approximately one month he converted all of the securities to cash through the investment firm used by the decedent and her late husband. The Belden asset was not sold because there was no market. The best offer came from Blake & Bel-

den, the sponsors of the investment who would pay $12,000 as an accommodation to the estate. The objector wanted the executor to sell it to him for $11,343.21, which is less than the sponsor offered. The trial court erred when it held that the problem would not exist if the asset had been sold to the objector. Had Donald sold to the objector, he would have done a disservice to the children of his sister, Jane, who were entitled to one-third of Belden, and to himself since he also was entitled to one-third. He then would be subjected to criticism for selling to the objector for less than the price offered by the sponsor. The objector, rather than the estate, would have received all of the $7,357 in dividends paid by Belden during the period of administration.

In April of 1984 the Belden asset was converted to 1,111 units of Belden & Blake Energy Company. The only witnesses that testified at the hearing were the objector and the executor. No evidence was presented to show that the 1,111 units of Belden were in fact 1,111 shares of Belden common stock which were traded on the American Stock Exchange.

On September 25, 1984, the executor filed a final account proposing a distribution in kind of the Belden asset. James L. Gammie objected.

The trial court held that the Belden asset dropped from $22 per share on October 30, 1984, to $14 per share on November 27, 1984, and determined that the executor should be accountable to the objector for the difference. Assuming that the Belden asset was indeed the security that was traded on the American Stock Exchange, James L. Gammie could have received his share in kind on September 25, 1984. He then could have sold the shares, if he so desired, on October 30, 1984, for the alleged market price of $22 per share. The only reason he could not do so is that he objected to the final account which would have distributed the shares to him. He cannot hold the executor responsible for his own poor judgment.

The executor acted in a prudent and responsible manner. He used the same investment firm that placed his parents in this investment. They were familiar with it. The record shows that a grandson of the decedent, and a legatee entitled to a portion of Jane's share, was employed by Blunt. Both the objector and the executor had personal accounts with the Blunt firm.

All of the other securities were expeditiously sold through the Blunt firm. The executor worked diligently with them in trying to dispose of the Belden asset. Obviously, there was some unexplained impediment to a speedy alienation of this asset.

There is no evidence of misconduct on the part of the executor. First, the objector tried to take advantage of the estate by attempting a bargain purchase for himself, which would have been detrimental to the other legatees. He then refused to participate in a blind bid for the Belden asset, which would have been fair to all of the legatees. He then objected to a distribution in kind, which would have delivered the asset to him more than a month before the market allegedly reached a high of $22 per share. Under these circumstances, James L. Gammie has no reasonable basis to complain.

Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

HARTMAN and SCARIANO, JJ., concur.